## STATE v. BUNK HAIRSTON.

(Filed 9 November, 1921.)

**1. Homicide—Firearms—Evidence.**

Where there is evidence, on the trial of an indictment for homicide, that the defendant and several others were congregated at the place where the shooting occurred, attracting public attention, which caused the sheriff to go and take two others with him, including the witness, it is competent for this witness to testify that he saw the defendant firing the pistol which resulted in the homicide, both as contradicting the defendant's evidence that he did not have a pistol, and as showing that the witness, who accompanied the sheriff in an attempt to prevent a general row, was rightfully on the premises.

**2. Appeal and Error—Harmless Error—Homicide—Flight—Evidence in Explanation—Instructions.**

While evidence of flight, after the commission of a homicide, may be taken as a circumstance in connection with the other evidence tending to show his guilt, which he may explain by showing that it was for a different reason, the exclusion of the testimony in explanation is *held* as harmless error on this appeal, it appearing that he had received the full benefit thereof in the subsequent admission of the same testimony and under proper instructions of the court thereon.

APPEAL by defendant from *Finley, J.,* at the Spring Term, 1921, of STOKES.

The defendant was convicted of murder in the second degree and from the judgment upon such conviction appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*William P. Bynum, McMichael & Johnson, and Folger, Jackson & Folger for defendant.*

WALKER, J. The defendant assigns only three errors on this appeal. Exceptions one, two and three. It appears that, on 18 April, 1920, some

dozen or fifteen negro men were congregated in and about a cafe and soft drink stand of Nick Hairston, in the village of Walnut Cove, when the firing of pistols attracted the attention of citizens of the town. Sheriff R. P. Joyce, taking with him Mr. Matthis and the witness Neal, went up to the stand. Neal was asked, "Why did you men go there on this occasion?" Answer: "Well, there was some shooting going on around the back·of the building and I walked out to see who was doing the shooting, and it was Billy Covington and Bunk Hairston."

The defendant objected to this question and answer, on the ground that they were immaterial and irrelevant. But the defendant, Bunk Hairston denied that he had a pistol at all on that occasion, and certainly this evidence was material for this reason. Again the same witness, Neal, was asked, "Why did you and Mr. Matthis and Sheriff Joyce come up later?" Answer: "Well, these boys had had their guns out and we saw them and went to take the guns away from them."

It would seem that this evidence was very material, as showing that these parties accompanying the sheriff, in his attempt to prevent a general row, were rightly on the premises. As a matter of fact, both Sheriff Joyce and Mr. Matthis were killed inside the stand by pistol shots, and the defendant was being tried for the killing of the sheriff. There was direct evidence that the defendant, Bunk Hairston, fired the shot which killed the sheriff.

Defendant's exception six, assignment of error three, was taken under the following circumstances: The defendant Bunk Hairston, was on the stand testifying in his own behalf and said that he had no pistol over there, and nothing to do with the killing of Sheriff Joyce or of Mr. Matthis. After the killing he seems to have gone off and was arrested about a mile from Walnut Cove. He testified further, "I went home, was fixing to go to church that night, and while standing by the dresser combing my hair, my coat and hat off, a white man came to the window, tapped on it and told me that I had better look out, that a mob was looking for me, and I had better leave." Upon the State's objection, this evidence was stricken out, and defendant excepted. It is quite probable that the defendant was entitled to this testimony, and that the ruling of the judge, standing alone, upon that testimony, may have been error. But it does not stand alone, because he expressly states on his cross-examination: "I was afraid to stay at home. Somebody told me they were hunting for me. I was not at home when arrested." Again, on re-direct examination, "I was afraid because someone told me that they were looking for me; that a mob had been made up and I had better skin out. I heard the crowd and it seemed like about fifty men. I then left. I was arrested about a mile from home." In stating the contentions of defendant on this point, the judge charged the jury that when he left, it was

because he was informed that they were looking for him. He left for fear of being lynched, or receiving bodily harm, and not as a result of the consciousness of guilt. Thus the defendant had the full benefit of the evidence stricken out before, and the error, if one was committed at first in excluding the evidence, was corrected by permitting the same evidence to come in afterwards, or at most, the error became harmless.

We have treated the testimony concerning what was said to the defendant at his home when he was preparing to go to church, as in the record, because it is afterwards referred to in the charge. This testimony, the subject of the fourth assignment of error, was offered for the purpose of explaining defendant's flight after the homicide. The defendant's objection to the exclusion of the evidence is based upon the fact that witnesses testified for the State, that the defendant fled immediately after the killing, offering this as some evidence of his guilt, and that he was apprehended near Dr. J. W. Slate's, about a mile from Walnut Cove, a day or two after the killing. In some way this testimony is not set out in the record, though it was offered by defendant and is referred to incidentally in the record and in the charge of the court, while stating the contentions of the State, viz.: "The State contends that after the killing he fled and the next day he was captured." This was a proper reference on the part of his Honor, because of the fact that this was a contention of the State and evidence was offered on that point. The defendant contends that his Honor erred in denying him the right to explain his flight, which, unexplained, has been held by the courts to be some evidence of the defendant's guilt and fit to be considered by the jury. Defendant says it was, therefore, competent for him to state, that after the killing he went home and was preparing to go to church, and that while standing near the dresser he was warned of the approach of a mob, and it was on this account that he fled and not from any realization of his guilt, or fear of a trial.

But we have shown that he had the full benefit of the evidence, the same in substance, and this removes the error, or renders it innocuous. One's flight, wherever and whenever occurring, is generally offered by the State as evidence of guilt, and unexplained is some evidence of it, and was particularly so in this case. The rule is clearly stated in Chamberlayne's Handbook on Evidence, sec. 559, beginning at bottom of page 423 and continuing on page 424, as follows: "Prominent among relevant acts of the accused showing a consciousness of guilt is flight. Where the prosecution can show in a criminal case that the accused has become a fugitive from justice," such a fact can be considered on the question of his guilt. And further: "Where one charged with crime, without good ground, departs from the jurisdiction shortly after the commission of the crime, with which he is charged, the circumstance may often be

highly significant. The law of early times made flight conclusive evidence of guilt. Under the more rational system of later times, the fact of flight is merely a circumstance tending to establish consciousness of guilt. It is settled that the defendant may offer any relevant explanation of his act. The accused may, for example, allege, in explanation of his flight, that he was apprehensive of personal violence. The advice of friends may be assigned as the cause of fleeing from the jurisdiction, and, in all cases, the accused is entitled to prove by his own testimony the actual motive which has influenced his conduct." The author cites the following cases: *Webb v. Com.,* 4 Ky., L. Rep., 436 (1882); *Lewallen v. State,* 33 Tox. Cr. Rep., 412 (S. C., 26 S. W. 832); 2 Chamb. Ev., 1399a, n. 11; *S. v. Phillips,* 24 Mo., 475; *S. v. McDevitt,* 69 Iowa, 549 (29 N. W., 459); *S. v. Barham,* 82 Mo., 67; *People v. Cleveland,* 107 Mich., 367 (65 N. W., 216); *Seawell v. S.,* 76 Ga., 836; 2 Chamb. Ev., sec. 1399a, notes 8 and 9. To these may be added our own case of *S. v. Mallonee,* 154 N. C., 200, at p. 203, and 12 Cyc., 610.

We said in the Mallonee case: "While it is true, as contended by the defendant's counsel, that it was a circumstance from which, in connection with other circumstances, the jury might draw an inference of conscious guilt unless explained (12 Cyc., 610), the whole matter is for them to pass upon, and they must decide what weight they will give to the fact of flight, and if there was explanatory evidence, to what extent it affects the probative force of the flight as a fact tending to show guilt. The entire charge is not set forth in the record, and we must assume, therefore, that it correctly stated the law of the case to the jury, in the absence of any showing to the contrary. We cannot condemn it by what was said in one or two detached portions, even if they are erroneous, because they may have been explained and corrected in other parts of the charge," citing *S. v. Kinsauls,* 126 N. C., 1097.

But we need not prolong the discussion as to this feature of the case, for we have already virtually disposed of this assignment of error by showing that while the defendant was entitled to explain his flight, by showing the real cause of it, that is fright, and not a sense of his guilt, upon the theory that the wicked flee when no man pursueth, he had the full benefit of his explanation subsequently, and this is all-sufficient.

We find no error that was committed at the trial, and none in the record.

No error.