Defendant was indicted for the murder of Will Cauthern. From a judgment on a verdict of "guilty of murder in the first degree," defendant appealed. No error.
The State's evidence tended to show that the body of Will Cauthern was found in a branch in Union County, and that his neck had been cut three times. The trachea was cut, as well as all the large veins and muscles of the neck, and the cartilage between the vertebrae was cut almost into the spinal cord. The jugular vein was cut and there was a cut on the back of his head, a blunt cut, or tear, by some blunt instrument with serrated edges. All these cuts went to the bone and death resulted instantly. The gastric nerve was severed, with everything in the neck on the left side; that the cutting of the gastric nerve produces instant death as well as the severing of the carotid artery and jugular vein. The wound in the back of the head appeared to be one blow. There was no evidence of a fractured skull.
On or about 2 May, 1925, at night, the prisoner and Will Cauthern and Mary, his wife, were together on the way to Will Cauthern's house, and while the prisoner and Will Cauthern were walking side by side, the prisoner had a stick, stepped back just a little way, and struck Cauthern a blow. The prisoner had the stick in his hand, and as soon as he struck the deceased, the deceased hollered "Oh," fell, and the defendant immediately began to cut him, and when the prisoner got up and ceased cutting him, he and Mary Cauthern lifted the dead body out of the road, over the fence and put it into a branch.
The State contended, upon the evidence, that the motive of the prisoner in killing the deceased was due to intimate relations between the prisoner and the wife of the deceased. *Page 508 
The defendant's first exception alleges the admission of a statement by the witness, Sheriff Fowler, to Mary Cauthern, while he was talking to her and trying to get her to tell him about the killing, that the prisoner had already told about the killing, when he said to her: "I want you to tell me the truth about this matter, we have suspected you all the time. You have been with Robert four weeks, five different Sundays, and you ought to have been with your husband." The objection was aimed at the latter clause of this statement. The court only admitted the conversation for the purpose of corroboration. Mary Cauthern had testified for the State. The witness Fowler said that after he made this statement to Mary, she denied it, and after she knew that the prisoner had told about the homicide and her part in it, she told about the trip to her house and the killing on the way. The evidence, the whole transaction, was competent for the purpose for which it was admitted. The extent to which it did or did not corroborate Mary Cauthern's testimony was for the jury. Prima facie the whole conversationwith her was competent.
The defendant relies on S. v. Parker, 134 N.C. 209; Sprague v. Bond,113 N.C. 551 and Lockhart's Hand Book on Evidence, sec. 278.
As stated in Sprague v. Bond, supra, and in S. v. Parker, supra, andWestfeldt v. Adams, 135 N.C. on page 600, it was then the rule that the trial judge must, with or without a request therefor, instruct the jury as to the limited purpose for which the corroborative evidence was admitted. However, since the amendment to Supreme Court Rule 27, adopted 16 March, 1904, now Rule 21, 185 N.C. 795: "When testimony is admitted, not as substantive evidence, but in corroboration or contradiction, and that fact is stated by the court when it is admitted, it will not be ground for exception that the judge fails in his charge to again instruct the jury specially upon the nature of such evidence, unless his attention is called to the matter by a prayer for instruction; nor will it be ground of exception that evidence competent for some purposes but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted." Hill v. Bean, 150 N.C. 437; Tisev. Thomasville, 151 N.C. 281, 283. A mere objection will not do, there must be a request to limit to corroborative purposes. Elliott v. R. R.,166 N.C. 481, 484; S. v. McGlammery, 173 N.C. 748. In the absence of a request at the time of admission to limit its purposes, or a request for special instruction in regard to it, a failure to limit this evidence in the charge cannot be assigned as *Page 509 
error. Beck v. Tanning Co., 179 N.C. 123, 127; Hill v. R. R., 180 N.C. 490,493; Murphy v. Lumber Co., 186 N.C. 746, 748. The record discloses a compliance with the rule.
Exceptions 2 and 3 relate to the remarks of the solicitor in contending that the sheriff's statements to Mary Cauthern, that she had spent five Sundays with the prisoner, and to argue that there was a motive, which had been proved, that the prisoner desired to kill the deceased in order to use his wife for illicit purposes, and that the evidence showed improper relations between the two. Counsel for prisoner did not object at the time or ask any special instructions. The exceptions, made for the first time in the case on appeal, are without merit. The prisoner evidently then thought there was no prejudice to him likely to arise. He did not object at the proper time. It is now too late. Morgan v. Smith, 77 N.C. 37, Harrison v.Chappell, 84 N.C. 258; Warren v. Makely, 85 N.C. 15; Horah v. Knox,87 N.C. 483; S. v. Suggs, 89 N.C. 527; S. v. Sheets, 89 N.C. 543; S. v.Lewis, 93 N.C. 581; S. v. Powell, 94 N.C. 965; S. v. Speaks, 94 N.C. 865;Holly v. Holly, 94 N.C. 96; S. v. Powell, 106 N.C. 635; Hudson v.Jordan, 108 N.C. 10; Byrd v. Hudson, 113 N.C. 203; S. v. Tyson,133 N.C. 692; S. v. Horner, 139 N.C. 603; S. v. Archbell, 139 N.C. 537; S.v. Harrison, 145 N.C. 408; S. v. Wilson, 158 N.C. 599.
There was ample evidence to justify the solicitor in arguing to the jury that the evidence showed a motive, and that the prisoner and the wife of deceased had been associating together in a manner that indicated undue familiarity. The prisoner admitted that deceased's wife was with him the Sunday before and the Sunday after the death of deceased. He further said she was at his house one night and slept in the bed between prisoner and his wife, and that he had been taking care of deceased's family when he was away. There were ample circumstances to justify the remarks and it was the duty of the solicitor to argue the whole case, and it is apparent, from the record, that this duty has been performed ably and fearlessly.
Exception numbered 5 shows no merit. There was ample evidence to justify a contention on the part of the State, and for the Court to submit this contention to the jury as to intimate relations between the prisoner and the wife of deceased. The testimony of the defendant fully justified the charge. Usually intimate relations are not susceptible of direct proof, and circumstances have to be relied on, but in the instant case the evidence is both circumstantial and direct.
Exceptions 6 and 7 relate to the stating of the State's contention that Mary Cauthern saw the prisoner "fall back a step and strike Will (the deceased) across the back of the head with the stick." Mary said in her testimony that Robert and Will were in front and "I behind. I *Page 510 
heard a lick and I heard him (Will) holler — Will hollered and when I got up to them he was down on him cutting him — Robert was down on Will Cauthern cutting him." She identified the stick that Robert had when he left his house. She indicated that she was, at the time of the lick, about as far as the witness-stand to the solicitor. The physician's description of the wound on the head of deceased indicated one blow on the back of the head with a blunt instrument — a severe blow tearing the skin in "serrated edges." Mary Cauthern was an accomplice in the crime with the prisoner. She pleaded guilty to a charge of murder in the second degree. The jury had a right to believe all or a part of her testimony, and the argument is amply sustained that, while she said she heard the blow, she was so close, only a few feet according to her indication, and that she saw it. There was no objection then, or later, and no request to correct the statement of contentions. The trial court, at some proper and convenient time in the trial, preferably just before the jury leaves the box, ought to be given an opportunity to restate any contention that may be inaccurate, and a failure so to request or to ask for special instructions on that point eliminates the assignment of error. S. v. Grady, 83 N.C. 643;S. v. Reynolds, 87 N.C. 544; Clark v. R. R., 109 N.C. 431; S. v.Tyson, 133 N.C. 692; S. v. Davis, 134 N.C. 633; S. v. Cox, 153 N.C. 638;Phifer v. Comrs., 157 N.C. 150; Jeffress v. R. R., 158 N.C. 215;S. v. Blackwell, 162 N.C. 684; S. v. Fogleman, 164 N.C. 461; S. v.Cameron, 166 N.C. 384; Ferebee v. R. R., 167 N.C. 297; Barefoot v. Lee,168 N.C. 90; Nevins v. Hughes, 168 N.C. 478; Ball v. McCormack,172 N.C. 682; S. v. Freeman, 172 N.C. 925; S. v. Burton, 172 N.C. 942; S. v.Martin, 173 N.C. 808; Muse v. Motor Co., 175 N.C. 471; Mfg. Co. v.Building Co., 177 N.C. 106; Bradley v. Mfg. Co., 177 N.C. 155; Futch v.R. R., 178 N.C. 284; Hall v. Giessell, 179 N.C. 657; McMahan v. SpruceCo., 180 N.C. 637; Spears v. Power Co., 181 N.C. 447; S. v. Reed,181 N.C. 507; S. v. Hall, 181 N.C. 527; S. v. Westmoreland, 181 N.C. 590;Green v. Lumber Co., 182 N.C. 681; S. v. Winder, 183 N.C. 777; S. v.Sheffield, 183 N.C. 783; S. v. Kincaid, 183 N.C. 709; S. v. Montgomery,183 N.C. 747; S. v. Baldwin, 184 N.C. 791; S. v. Ashburn, 187 N.C. 723;S. v. Barnhill, 186 N.C. 446; Proctor v. Fertilizer Co., 189 N.C. 244.
S. v. Love, 187 N.C. 33, is not an apposite authority for the prisoner. The error in that case was in the violation of a constitutional right of the defendant, when charged with crime, to know the nature of the charge and to confront his accusers and the witnesses against him. In the case at bar the contention of the State was given, and no exception taken at the time or during the trial, and the contention was fully supported by the inferences naturally arising from the evidence. S. v. Cook, *Page 511 162 N.C. 586, cited for prisoner, relates only to an expression of opinion by the trial court. There is no basis for such a contention here.
Exceptions 8, 9, 10 and 11 relate to the failure to charge the jury that there was no evidence of premeditation.
Murder in the first degree is the unlawful killing of a human being with malice, and with premeditation and deliberation. S. v. Thomas, 118 N.C. 118;S. v. Benson, 183 N.C. 795. Malice is presumed from the killing of a human being with a deadly weapon. S. v. Benson, supra.
"Deliberation means that the act is done in cool state of the blood. It does not mean brooding over it or reflecting upon it a week, a day, or an hour, or any other appreciable length of time, but it means an intention to kill, executed by the defendant in a cool state of the blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause, or legal provocation." S. v. Coffey, 174 N.C. 814; S. v. Benson, supra.
"Premeditation means `thought before hand' for some length of time however short." S. v. McClure, 166 N.C. 328; S. v. Benson, supra.
The facts and circumstances and the inferences readily drawn therefrom, are, in the light of the acceptance of the State's contention by the jury, and its refusal to accept the prisoner's plea of self-defense, ample to support a finding of premeditation and deliberation. This support is sufficient and does not include the evidence of secreting the body after the killing.
Subsequent acts, including flight or hiding the body, or burning the bloody clothes and otherwise destroying traces of the crime, are competent on the question of guilt. Wigmore on Evidence (2 ed.), secs. 32, 172, 267, 273, 276 (see elaborate note appended to this section showing the holdings of the Federal and State courts); S. v. Tate, 161 N.C. 280; S. v.Westmoreland, 181 N.C. 595; S. v. Hairston, 182 N.C. 851; S. v.Collins, 189 N.C. 20; S. v. Stewart, 189 N.C. 347. The basis of this rule is that a guilty conscience influences conduct. From time immemorial it has been thus accepted. "The wicked flee when no man pursueth; but the righteous are bold as a lion." — 28 Prov. 1. "Thus conscience doth make cowards of us all." — Hamlet, Act III, scene I. "Guilty consciences always make people cowards." — The Prince and his Minister, Pilpay, chap. III, Fable III.
Flight is not evidence of premeditation and deliberation. S. v.Hairston, supra; S. v. Collins, supra; S. v. Stewart, supra.
The requirement, in first degree murder, in order to constitute "deliberation and premeditation" does not require any fixed time beforehand. These mental processes must be prior to the killing, not simultaneous, *Page 512 
"but a moment of thought may be sufficient to form a fixed design to kill."S. v. Norwood, 115 N.C. 790; S. v. McCormac, 116 N.C. 1033; S. v.Covington, 117 N.C. 834; S. v. Dowden, 118 N.C. 1145, 1153; S. v.Thomas, 118 N.C. 1113, 1123; S. v. Exum, 138 N.C. 599.
This case has been fairly tried by a careful, impartial and learned judge. The solicitor has performed his duty in all respects as becomes one charged with the delicate and important duties of that high office. Counsel for the defendant, appointed by the court to defend the prisoner as we are informed, have conscientiously and ably presented every phase of the situation that showed any hope for relief.
The charge of the court is clear and complete. It applies the law to the evidence so that the jury could not have failed to understand every contention of the State and the prisoner.
The court below explained what is meant by reasonable doubt in the manner indicated in the rulings of this Court. We suggest, in addition to the definitions heretofore approved, for its practical terms, the following: "A reasonable doubt, as that term is employed in the administration of criminal law, is an honest, substantial misgiving, generated by the insufficiency of the proof; an insufficiency which fails to convince your judgment and conscience, and satisfy your reason as to the guilt of the accused." It is not "a doubt suggested by the ingenuity of counsel, or by your own ingenuity, not legitimately warranted by the testimony, or one born of a merciful inclination or disposition to permit the defendant to escape the penalty of the law, or one prompted by sympathy for him or those connected with him." Jackson, J., in U.S. v. Harper, 33 Fed., 471.
We have examined all the exceptions, and under well settled principles, are compelled to the conclusion that none of them can be sustained.
Let it be certified that, in the trial of this case, there is
No error.