STATE v. RUSSELL AND EDGAR MULL.

(Filed 12 December, 1928.)

**1. Criminal Law—Evidence—Flight of Defendant as Evidence—Explanation of Flight—Homicide.**

Flight of the accused after a homicide has been committed is competent with other relevant evidence as a circumstance to show guilt, subject to the explanation of the defendant, and he may give his testimony that he had been informed that the relatives of the deceased, of dangerous character, had threatened his life, and that he had been advised by his father to flee.

**2. Same—New Trial.**

When the defendant on trial for a homicide has been excluded from testifying to facts in explanation of his flight after the offense had been committed, and it is made to appear on appeal that such evidence was material to his defense, a new trial will be ordered.

**3. Same.**

The credibility of the testimony of the defendant on trial for homicide in explanation of his flight thereafter, is for the jury.

CRIMINAL ACTION, before *Finley, J.,* at March Term, 1928, of BURKE.

The defendants, Russell and Edgar Mull, were charged with the murder of Tony Lafevers. The solicitor did not ask for a verdict for murder in the first degree, but for a conviction of murder in the second degree or manslaughter.

The evidence tended to show that on the night of 26 June, 1926, Gerald Mull had an ice-cream supper in an open field near Morganton. The defendants, who are brothers, and the deceased were present. There was a conflict in the testimony of the witnesses for the State and for the defendants. The deceased and the defendant, Edgar Mull, engaged in a fight, and the deceased was knocked down by said defendant, who was unarmed. Thereupon the deceased drew a pistol and fired at the defendant, Edgar Mull, inflicting a severe wound. The other defendant, Russell Mull, hearing the commotion, ran to the scene of the conflict and shot Tony Lafevers and killed him. It is impossible to harmonize the testimony with respect to how the fight started and who was the aggressor. The two defendants, however, left the place of the killing and went down on the river where they remained in hiding for about ten days, and then they departed for a western state where they remained until about 4 January, 1928, when they returned to Burke County and voluntarily surrendered to the sheriff.

Edgar Mull was acquitted, but Russell Mull was convicted and sentenced to a term of not less than three nor more than five years in the State's prison, and he appealed.

*Avery & Patton, Spainhour & Mull and Ervin & Ervin for defendant.*
*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

BROGDEN, J. Is a defendant who flees after committing a felony, entitled to explain the circumstances of his flight and the inducements thereto?

A witness for the State was asked if he knew where the defendants were from 26 June, 1926, to 1 January, 1928, and he testified that they were not in Morganton after that night until the first of the year 1928. Thereafter, the defendant, Edgar Mull, while being examined as a witness, was asked the following question: "What, if anything, induced you to remain in hiding down on the river and to leave the State?" Objection was made by the State and the answer excluded. The record discloses that if permitted to answer, the witness would have said: "The night of the trouble Russell and me were informed that the brothers of Tony Lafevers were searching for us in the woods with guns. While

we were hiding down on the river our father, Joe Mull, advised us to leave, and informed us that Herm and Andrew Lafevers, the brothers of Tony, had threatened to kill us on sight. I knew that Andrew and Herm had the general reputation of being dangerous men, and I did not want to have to kill anybody or to be killed. We left the State to let the excitement die down." The same testimony was again offered by the defendant and excluded by the court. The defendant, Russell Mull, testifying in his own behalf, was asked the same question and would have given the same answer, but the evidence was excluded by the court.

The law with respect to flight is thus stated in *S. v. Malonee,* 154 N. C., 200, 69 S. E., 786: "While it is true, as contended by the defendant's counsel, that it was a circumstance from which, in connection with other circumstances, the jury might draw an inference of conscious guilt unless explained, the whole matter is for them to pass upon, and they must decide what weight they will give to the fact of flight, and if there was explanatory evidence to what extent it affects the probative force of the flight as a fact tending to show guilt." The weight to be attached to this circumstance is a matter for the jury to determine in connection with all the facts in the case.

Again, in *S. v. Hairston,* 182 N. C., 851, 109 S. E., 45, this Court said: "The law of early times made flight conclusive evidence of guilt. Under the more rational system of later times, the fact of flight is merely a circumstance tending to establish consciousness of guilt. It is settled that the defendant may offer any relevant explanation of his act. The accused may, for example, allege, in explanation of his flight, that he was apprehensive of personal violence. The advice of friends may be assigned as the cause of fleeing from the jurisdiction, and, in all cases, the accused is entitled to prove by his own testimony the actual motive which has influenced his conduct." The law contemplates that a defendant, in cases where flight is a relevant circumstance, has the right to explain the flight not only by his own testimony, but also by other proper proof, and the jury is to determine the weight to be given the explanatory evidence so offered.

The further contention that while the exclusion of the explanation of flight might be considered error, nevertheless the defendant in other portions of the testimony received the full benefit of such explanation. However, we do not so interpret the record. Both defendants were young men living in the home of their father. They testified that while they were in hiding the father came to them and advised them to leave the country because the brothers of the deceased were threatening to kill them on sight. It is not disclosed in any portion of the evidence

23—196

that the defendants were permitted to testify as to what advice they received from their father. The advice of a father given to his own son in time of stress and excitement, would doubtless exert great influence upon the mind of the son. We, therefore, hold that the exclusion of the explanation offered by the defendants, was material error warranting another trial of the cause.

New trial.