STATE v. ADAM LEWIS.

(Filed 22 January, 1936.)

**1. Homicide B a—Evidence held sufficient for jury on question of premeditation and deliberation.**

Evidence that defendant went to the home of deceased and her sister, quarreled with them and assaulted them with a poker, and was disarmed, that later on the same afternoon he went in search of deceased, or her sister, and stated, "If I should happen to go back up the road not to tell nobody where I am going," that he pursued deceased's sister out of the house of a neighbor with a hammer, and quarreled with deceased and her sister in the middle of the street, and that as deceased turned to leave the scene, he cursed her in response to some remark uttered by her, and struck her with the hammer and continued to hit her until she was dead, *is held* sufficient to be submitted to the jury on the question of premeditation and deliberation.

**2. Same: Homicide G d—Flight is not evidence of premeditation and deliberation.**

Although flight of defendant after commission of the crime is a competent circumstance to be considered by the jury in connection with other circumstances as an implied admission of guilt, in a prosecution for homicide, flight is not evidence of premeditation and deliberation, and where, upon proffer of evidence by the State relating to the search for defendant immediately after the commission of the crime, the court admits the evidence over defendant's objection, remarking at the time that he thought it competent on the question of premeditation and malice, a new trial will be awarded defendant on appeal, although the charge of the court to the jury correctly states the law relating to the scope of such evidence.

APPEAL by defendant from *McElroy, J.,* and a jury, at March Term, 1935, of GUILFORD. New trial.

The defendant was tried on a bill of indictment for the murder of Jemima Peoples, on 20 February, 1935. The jury returned a verdict of murder in the first degree with a recommendation for mercy. Defendant was sentenced by the court below to death as provided by law.

The evidence on the part of the State was to the effect that Jemima Peoples was a single woman, 26 years of age, living with her father, Dock Peoples, at Terra Cotta, a colored community on Railroad Avenue, outside the city limits of Greensboro, N. C. The evidence is to the effect that on the afternoon of 20 February, 1935, about 3 o'clock, Adam Lewis, the defendant, killed Jemima Peoples, in a street near her home at Terra Cotta. That the defendant went to the home of the deceased, and a short distance before reaching the home had a conversation with one Columbus Rawley, a colored man. That when the defendant reached the home of Jemima Peoples, that he went in where her sister Elnora Peoples was preparing a meal; and soon after that the defendant began to question Elnora Peoples where she was on Monday night, whereupon she told him that she was at home, and that when he asked Jemima where Elnora was that she said that she was at home; and that the defendant at that time told them both they were liars and threatened to hit Elnora with an iron fire-poker, but that they took the poker out of his hand. That thereafter Elnora left her home and went to the home of one Anderson Watkins, a distance of about 200 yards, and there concealed herself upstairs in the residence; that the defendant and the deceased, Jemima, remained at her home a short time and the defendant picked up a hammer at the Peoples' home and thereafter went in search of Elnora Peoples, who had been his sweetheart for some two years. That he went to the home of Anderson Watkins and inquired about Elnora, and was told that she was not there, and that the defendant went beyond the Anderson Watkins home and not finding the said Elnora Peoples, returned to the home of Anderson Watkins and went through the house, but did not find Elnora. At that time Jemima Peoples had arrived at the home of Anderson Watkins and she and the defendant walked from the Anderson Watkins home to the center of the street or roadway. That Jemima Peoples said something to the defendant, "they stopped, she went to turn around, and as she was turning around the defendant said: 'God damn you, you is, is you?' and hit her with the hammer." (Another version was that before he hit her she said: "I will tell my father.") That he drew back the hammer with his hand and as he did this the said Jemima Peoples was in the act of turning away from him, and that he hit the said Jemima Peoples in the head with the hammer, and she immediately fell to the ground, and that the defendant

continued to hit the said Jemima Peoples in the head with the hammer several different times until she was dead. Soon thereafter Adam Lewis went into the woods nearby and was not seen any more until about midnight that night. The defendant appeared at the home of one Roosevelt Eccles, in whose home defendant has been residing in Terra Cotta, and that upon being apprised of what he did on that afternoon denied that he knew anything about the killing. He stated to the sheriff and some of those with whom he came in contact that he had no recollection of the event of the slaying of Jemima Peoples, but that he did remember going to the home of the said Jemima Peoples on 20 February, 1935, and drew some water and did some other chores, and remembered meeting Columbus Rawley, but did not remember having any quarrel with the deceased or altercation with her or her sister, Elnora.

The defendant was examined by Dr. J. Wesley Taylor, an expert, a specialist in mental and nervous diseases, residing in Greensboro, N. C., and the examination by him and Dr. R. M. Buie, the county health officer of Guilford County, revealed that the defendant is an epileptic, and that Dr. Taylor testified that while a person is suffering from an attack of epilepsy he does not have any recollection of what he does, nor does he have sufficient mentality to know the character and quality of his act, and to know the difference between right and wrong, and that a person during that time might fall prostrate and have no use of his body, or that he might continue to move around, walk and talk and act apparently as other persons, but would not have any recollection of what he did while under the attack of epilepsy.

The defendant made numerous exceptions and assignments of error on the trial, and appealed to the Supreme Court. The material one will be considered in the opinion.

*Attorney-General Seawell and Assistant Attorneys-General Aiken and Bruton for the State.*
*Frank L. Paschal for defendant.*

CLARKSON, J. At the close of the State's evidence and at the close of all the evidence, the defendant made motions in the court below for judgment as in case of nonsuit. (N. C. Code, 1935 [Michie], sec. 4643). The court below overruled these motions, and in this we can see no error.

"In order to constitute deliberation and premeditation, something more must appear than the prior existence of actual malice, or the presumption of malice which arises from the use of a deadly weapon. Though the mental process may require but a moment of thought, it must be shown, so as to satisfy the jury beyond a reasonable doubt that the prisoner weighed and balanced the subject of killing in his mind long enough to consider the reason or motive which impelled him to act, and to form

7—209

a fixed design to kill in furtherance of such purpose or motive. *S. v. Thomas,* 118 N. C., 1113. Premeditation is thought beforehand for any length of time, however short. The intent to kill in other degrees of unjustifiable homicide, but to constitute murder in the first degree that intent must be formed into a fixed purpose by deliberation and premeditation. The statute simply divides murder into two classes; murder with a specific premeditated and deliberate intent to take life being murder in the first degree; murder without such intent being murder in the second degree." Jerome's Criminal Code and Digest of N. C. (5th Ed.), p. 466. *S. v. Bittings,* 206 N. C., 798.

In *S. v. Cagle, ante,* 114, it is said: "Defendant's motion for nonsuit was properly denied. As was said in *S. v. Johnson,* 184 N. C., 637: 'We could not nonsuit the State, . . . for when there is a killing with a deadly weapon, as there was in this case, the law implies malice, and it is, at least, murder in the second degree, and the burden then rests upon the prisoner to satisfy the jury of facts and circumstances in mitigation of or excuse for the homicide, the credibility of the evidence, and its sufficiency to produce this satisfaction being for the jury to consider and decide.'"

There is ample evidence of premeditation and deliberation. The evidence, before the defendant went to the house of the deceased: "If I should happen to go back up the road not to tell nobody where I am going." He attempted to assault the two women with a fire-poker and they disarmed him, and his question in reference to what time Nora Peoples came home and on being told saying "both of us was telling a lie."

Nora Peoples leaving the house with defendant pursuing her with a hammer, which he had at the time; his striking Jemima in the head when she was turning around and continuing to hit her with the hammer in the head after she had fallen, until she was dead, and his expressions at the time were sufficient to be submitted to the jury on premeditation and deliberation.

J. S. Phillips, sheriff of Guilford County, testified that he was at the scene of the killing immediately after, about 4 o'clock. That he at once commenced a search for defendant, with 10 or 15 officers, "scoured the whole community. . . . There were a number of colored people helped us as well as white, about 25 or 30, I expect, all told. Q. Did you know how far up and down the railroad track you looked, Mr. Phillips? (Objection by the defendant for that it is immaterial). The Court: I think it is competent in determining premeditation, and it is competent to show malice. Answer: We looked not only on the railroad, but the whole surroundings there, and some of the colored people came to our assistance, and they went and looked for him." Exception and assignment of error by defendant was made to the above.

In *S. v. Stewart,* 189 N. C., 340 (347), is the following: "Flight, it is true, is not in itself an admission of guilt; but, when established, it is a fact which, together with a series of other circumstances, may be associated with the fact in issue as, in the relation of cause and effect, to lead to a satisfactory conclusion. Considered in its proper setting and in its relation to other parts of the charge, the instruction complained of, as we understand it, imports only this—that the jury might consider evidence of flight in connection with other circumstances in passing upon the question whether the combined circumstances were tantamount to an implied admission of guilt, and not that flight *per se* constitutes such an admission or raises a presumption of guilt. When so considered, the instruction is in accord with the authorities in this jurisdiction. *S. v. Tate,* 161 N. C., 280; *S. v. Hairston,* 182 N. C., 851. His Honor took care to say that neither flight nor attempted concealment created a presumption of premeditation and deliberation. *S. v. Foster,* 130 N. C., 666." *S. v. Steele,* 190 N. C., 506 (511). Flight is a circumstance to be submitted to the jury. *S. v. Lawrence,* 196 N. C., 562 (577); *S. v. Bittings, supra* (803); *S. v. Beard,* 207 N. C., 673. Flight is subject to explanation. *S. v. Mull,* 196 N. C., 351.

This Court has said in several cases, including the above cases, that flight is not evidence of premeditation and deliberation. *S. v. Collins,* 189 N. C., 15 (20).

The able, painstaking, and learned judge in the court below tried the case with unusual care. The charge covered every aspect of the controversy, and the law applicable to the facts was fully given. This is all so, but we think, under the authorities, that flight is no evidence of premeditation and deliberation. What was said by the court below was prejudicial and reversible error.

For the reasons given, there must be a

New trial.