### STATE v. EDGAR WOODROW MARSH.

(Filed 19 September, 1951.)

**1. Homicide § 10c—**

An instruction to the effect that if defendant did not have the mental capacity because of drunkenness to deliberate and premeditate he could not be guilty of murder in the first degree, and that the burden of establishing premeditation and deliberation beyond a reasonable doubt was upon the State, *held* to give defendant the full benefit of his defense of inebriacy.

**2. Robbery § 3—**

Upon conviction of defendant of robbery and not of robbery with firearms as charged, a judgment of twenty-five to thirty years in the State's Prison is in excess of the statutory maximum. G.S. 14-2, G.S. 14-87.

**3. Criminal Law § 33—**

The competency of a confession is a primary question for the trial court, and the court's ruling that the confession was voluntary and competent is not subject to review when supported by competent evidence upon the preliminary hearing.

**4. Same—**

A confession must be taken in its entirety, giving defendant the benefit of that part favorable to him as well as giving to the State the benefit of that part which militates against him.

**5. Criminal Law § 52a—**

Where motion for nonsuit is not limited to a particular count in the bill of indictment or to any one degree of the crimes charged, but is ad-

101

dressed to the entire bill or both counts as a whole, the motion cannot be allowed in the face of evidence sufficient to support any count or any degree of any count.  G.S. 15-173.

**6. Homicide § 27c—Conduct immediately before and after homicide may be considered on question of premeditation and deliberation.**

An instruction to the effect that the jury might take into consideration defendant's conduct before and after as well as at the time of the homicide and all attendant circumstances in determining the questions of premeditation and deliberation will not be held for error as permitting the jury to consider defendant's flight the morning after the homicide or attempted suicide sometime thereafter in determining the questions when it is apparent from the record that the charge referred to attendant circumstances at the time of the homicide as indicative of the purpose and intent in defendant's mind at that time, which immediate circumstances were sufficient to support an affirmative finding.

**7. Homicide § 27i:  Criminal Law § 53n—**

An instruction that the jury "may for any reason and within your discretion" recommend life imprisonment upon conviction of first degree murder will not be held for error as requiring the jury to have a reason for such recommendation when in other portions of the charge the court had placed the matter in the unrestricted discretion of the jury and the charge construed contextually could not have been misleading.  G.S. 14-17.

**8. Criminal Law § 81c (2)—**

Where inexact expressions in the charge are readily reconcilable under the rule of contextual construction, they will not be held for reversible error.

**9. Indictment and Warrant § 8—**

The better practice is to try capital cases on single-count bills or bills containing only capital charges.

This opinion was written in accordance with the Court's decision and filed by order of the Court after *Chief Justice Stacy's* death.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Pless, J.,* April Term, 1951, of SURRY.

Criminal prosecution on two-count bill charging the defendant (1) with robbery with firearms from the person of Allen Phillips certain personal property, to wit, pocketbook, flashlight and more than thirty dollars in money the property of the said Allen Phillips, and (2) with the murder of Allen Phillips contrary to the statutes, G.S. 14-87 and G.S. 14-17, in such cases made and provided.

The record discloses that on Friday, 9 February, 1951, about 8:30 p.m., the defendant engaged a taxicab, with Allen Phillips driving, to take him from Mount Airy to Wes Scott's place in Shoals, Surry County, where he had previously lived.  It is in evidence that the defendant first

STATE *v.* MARSH.

"got Allen Phillips to take him to get some whiskey," which he did, and "he got nearly ½ gallon of white whiskey." He could not or would not say from whom he bought it. When they reached Wes Scott's place in Shoals, they did not stop but drove on down the road near a turnip patch to turn around. Here a fuss or fight ensued between the two over the amount the defendant was to pay for the trip, the defendant contending the price of the trip was eight dollars, whereas the driver wanted ten.

The defendant cut Phillips about the head and chest with a Scout knife which he had purchased that afternoon, the chest wound being particularly dangerous—about five inches in depth. They seem to have fought in the cab, which was very bloody, and also on the outside. The driver jumped back into the cab and drove away, leaving the defendant standing in the road. The defendant says in his confession that he thus withdrew from the fight and walked to the corner of the house where he lived some three to four hundred yards away and was leaning up against the house when he heard Phillips coming up the road on foot hollering. He "wasn't just hollering . . . but screaming or squalling." Soon he reached the spot where the defendant was and picked up a stick of wood while still hollering; whereupon the defendant picked up an axe lying near the woodpile and struck him with it. Phillips thereupon ran back of the house, across the pasture and through a barbed-wire fence, with the defendant chasing him, axe in hand. The defendant caught up with Phillips in a little road leading to the barn, hit him with the axe which caused him to fall to the ground and he quit hollering. The defendant took Phillips' money, pocketbook and flashlight and went back to the house. He was not certain whether Phillips was dead but thought he was when he left him.

The defendant spent the night at his mother's home and left the next morning about daybreak. He sought safety in flight and attempted suicide by swallowing carbolic acid, both of which proved unsuccessful or unavailing for the purpose. His confession recites the reason he took the carbolic acid was "because he knew he would be caught and he knew he would be killed anyway so he decided to do it himself."

The defendant also, in his confession to the officer, first states that "he was not drunk on Friday night." Later he says, "he was pretty well drunk." The defendant did not offer himself as a witness on the hearing.

Verdict: On the first count: "Guilty of robbery."

On the second count: "Guilty of murder in the first degree."

Judgment: In the robbery case: Imprisonment in the State's Prison for not less than 25 nor more than 30 years. This judgment not to interfere with or to delay the judgment on the second count.

In the homicide case: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Charles M. Neaves and E. C. Bivins for defendant.*

STACY, C. J., after stating the facts as above: The defendant states in his confession that, with axe in hand, he pursued Allen Phillips over the snow-covered pasture, across a barbed-wire fence, overtook him in the road leading to the barn, struck him a lethal blow on the head with the axe, felled and silenced him, robbed him and left him for dead. These facts alone, if true, and the jury has accepted them as such, render the legal questions debated on brief, assuming the defendant's sanity, somewhat pedantic or academic. He certainly was not fighting in his own self-protection when his antagonist was trying to get away from him, and he does not so contend. His defense of drunkenness and mental irresponsibility was rejected by the jury. He could not have been very drunk when, with axe in hand, he chased Phillips a distance of some 40 or 50 yards, across the pasture, over a barbed-wire fence, down the road, and slew him. Nevertheless, he was given full benefit of his contention of inebriacy and mental deficiency in the court's charge to the jury. *S. v. Ross,* 193 N.C. 25, 136 S.E. 193, as witness the following: ". . . while the defendant has no burden so far as establishing a lack of premeditation and deliberation—the State has the burden of showing that beyond all reasonable doubt before it can obtain a verdict of guilty of murder in the first degree—at the same time if the defendant has satisfied you that he did not have the mental capacity because of his drunkenness to deliberate and premeditate, he could not be guilty of murder in the first degree." Accordant: *S. v. Swink,* 229 N.C. 123, 47 S.E. 2d 852; *S. v. Harris,* 223 N.C. 697, 28 S.E. 2d 232.

On the first count, however, as the jury convicted the defendant only of robbery and not of robbery with firearms as charged in the bill of indictment, the judgment imposed of from 25 to 30 years in the State's Prison is in excess of that allowed by statute, G.S. 14-2. *S. v. Surles,* 230 N.C. 272, 52 S.E. 2d 880. Hence, the judgment on this count will be vacated and remanded for proper judgment, if for any reason the judgment on the second count is not carried out.

On the second count, that of murder, the defendant challenges (1) the voluntariness of his confession, (2) the sufficiency of the evidence to carry the case to the jury, and (3) the correctness of the charge.

*First, The Voluntariness of the Defendant's Confession:*

The defendant made several statements to the investigating agent of the State Bureau of Investigation, one on 11 February, another on 12 February, while the defendant was in the hospital recovering from carbolic acid poisoning, and a third on 1 March, 1951, while he was in

jail, all in the nature of confessions. They were the subject of a pre-
liminary investigation, touching their voluntariness, and ruled competent
by the court. *S. v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620; *S. v.
Biggs,* 224 N.C. 23, 29 S.E. 2d 121. The ruling is supported by the
record. *S. v. Brown,* 233 N.C. 202, 63 S.E. 2d 99.

The competency of a confession is a preliminary question for the trial
court, *S. v. Andrew,* 61 N.C. 205, to be determined in the manner pointed
out in *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603, and the court's ruling
thereon is not subject to review, if supported by any competent evidence.
*S. v. Alston,* 215 N.C. 713, 3 S.E. 2d 11. The defendant offered no
evidence on the preliminary inquiry. His present objection to the con-
fession and the court's ruling thereon must be overruled or held for
naught. *S. v. Bennett,* 226 N.C. 82, 36 S.E. 2d 708. Of course, the
confession is to be taken as a whole in its entirety, the part which makes
in favor of the accused as well as the part which militates against him.
*S. v. Edwards,* 211 N.C. 555, 191 S.E. 1. This seems to have been done
on the trial.

*Second. The Sufficiency of the Evidence:*

The demurrer to the evidence was properly overruled. There is no
part of the defendant's confession which would seem to warrant an ac-
quittal. The exception appears to have been taken out of the abundance
of caution. The motion was "for judgment as of nonsuit on both counts
in the bill of indictment." Note, the motion is not limited to a single
count or any one degree of the crimes charged, but it is addressed to the
entire bill or to both counts as a whole. The motion could not be allowed
in the face of testimony to support either count or any degree of either
count, of which there was ample evidence in the instant case. G.S. 15-173.

*Third. Exceptions to the Charge:*

The defendant objects to the following instruction: "In determining
the questions of premeditation and deliberation it is proper for the jury
to take into consideration the conduct of the defendant before and after,
as well as at the time of the homicide and all attending circumstances."

The excerpt seems to have been taken from the opinion in *S. v. Evans,*
198 N.C. 82, 150 S.E. 678. The criticism here is, that the "after" con-
duct of the defendant would include his flight and attempted suicide
which may be considered only on the issue of guilt and not as tending to
show premeditation or deliberation. *S. v. Payne,* 213 N.C. 719, 197 S.E.
573 (flight); *S. v. Lewis,* 209 N.C. 191, 183 S.E. 357 (flight); *S. v. Mull,*
196 N.C. 351, 145 S.E. 677 (flight); *S. v. Hairston,* 182 N.C. 851, 109
S.E. 45 (flight); *S. v. Lawrence,* 196 N.C. 562, 146 S.E. 395 (attempted
suicide); *S. v. Exum,* 213 N.C. 16, 195 S.E. 7 (attempted suicide);
*S. v. Steele,* 190 N.C. 506, 130 S.E. 308 (secreting body after killing).
The objection appears somewhat strained as the after-attendant circum-

STATE *v.* MARSH.

stances would hardly include the defendant's conduct on the following day. The court was here speaking to the purpose and intent in the defendant's mind at the time of the homicide. This, the jury must have understood. Moreover, there is no mention in the court's charge of the defendant's attempted suicide or flight, save the bare recital that the defendant spent the night of the homicide at the home of his mother and stepfather "and left about daybreak the next morning." Nor was there any request to charge on the significance of these circumstances or in what light they should be considered by the jury. Evidently, the defendant's conduct long after the homicide was not a matter of debate on the hearing. The immediate circumstances were apparently sufficient. The contention presently advanced seems to have been an afterthought.

Exception is also taken to the instruction that in case the jury should return a verdict of guilty of murder in the first degree, "You may for any reason and within your discretion add to that the recommendation, if you desire to do so, that he be imprisoned for life, in which event that disposition will be made of the case."

The objection to this instruction is that it requires the jury to have a reason for such recommendation arising perhaps upon the evidence, whereas the statute, G.S. 14-17, as amended by Chap. 299, Session Laws, 1949, commits the matter to the unrestrained discretion of the jury. *S. v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212.

The criticism loses its force when considered with another portion of the charge. The court had previously instructed the jury that if they should render a verdict of murder in the first degree, then "You may, if you so determine, in your own discretion add to that verdict a recommendation of life imprisonment."

Viewing the charge in its entirety and as a whole, as required by the established practice, we reach the conclusion that the exception is insufficient to overthrow the results of the trial.

There are other exceptions appearing on the record, some brought forward and discussed on brief, others not, which have received due attention, but as they appear insufficient to work a new trial we forego further discussion of them in the opinion. The several inexact expressions pointed out by the defendant are readily reconcilable under the rule of contextual construction. *S. v. Bullins,* 226 N.C. 142, 36 S.E. 2d 915; *S. v. Exum,* 138 N.C. 599, 50 S.E. 283; *Speas v. Bank,* 188 N.C. 524, 125 S.E. 398. "The charge must be considered contextually and not disjointedly." *Milling Co. v. Highway Com.,* 190 N.C. 692, 130 S.E. 724.

On the whole, the case appears to have been tried in substantial conformity to the requirements of the decided cases or the pertinent authorities.

While no objection has been interposed to the joinder of the two counts in the same bill, it may be observed that the usual practice, and perhaps the more desirable practice, is to try capital cases on single-count bills, or bills containing only capital charges.

The validity of the trial will be upheld.

The result, then, is:

On the robbery count, Error and remanded (provisionally).

On the murder count, No error.

NOTE: This opinion was written in accordance with the Court's decision and filed by order of the Court after *Chief Justice Stacy's* death.

VALENTINE, J., took no part in the consideration or decision of this case.