STATE v. ROBERT S. CONNER.

(Filed 4 February, 1955.)

**1. Constitutional Law § 9: Criminal Law § 54i—**

In a prosecution for a capital felony, the right of the jury to recommend life imprisonment rests in its unbridled discretion and should be exercised by the jury on the basis that imprisonment for life means imprisonment for life in the State's prison, without considerations of parole or eligibility therefor, the power of parole being vested exclusively in the executive branch of the State government. Constitution of North Carolina, Art. III, Sec. 6. G.S. 14-17; G.S. 148-58.

**2. Criminal Law § 53n—**

When, in a prosecution for a capital felony, the question of eligibility for parole arises spontaneously during the deliberations of the jury, and is brought to the attention of the court by independent inquiry of the jury and request for information, the court should instruct the jury that the question of eligibility for parole is not a proper matter for the jury to consider and should be eliminated entirely from their deliberations, and the action of the court in merely telling the jury that he cannot answer the inquiry must be held for prejudicial error upon appeal from conviction of the capital felony without recommendation of life imprisonment.

PARKER, J., dissents.

HIGGINS, J., dissenting.

APPEAL by defendant from *Phillips, J.,* and a jury, at 12 July, 1954 Term of FORSYTH.

Criminal prosecution upon a bill of indictment charging the defendant with the murder of one Langston B. Roberts while in the perpetration of the crime of robbery.

There was a verdict of guilty of murder in the first degree without recommendation of life imprisonment, followed by judgment imposing sentence of death by asphyxiation, from which the defendant appeals.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Philip E. Lucas and Oren W. McClain for defendant, appellant.*

JOHNSON, J. After the jurors had deliberated upon the case for some time, they returned to the courtroom and, after informing the court they desired further information on a matter that had arisen, one of the jurors propounded this question: "Will the defendant be eligible for parole if he were given life imprisonment?" To the inquiry the court replied without further elaboration: "Gentlemen, I cannot answer that question."

For the court to have answered the question propounded by the jury so as to have given them the information sought would have been to tell them in substance that the defendant, if given life imprisonment, would be eligible for parole by virtue of the mandate of Article III, Section 6, of the Constitution of North Carolina, which vests in the Governor the exclusive power to grant reprieves, commutations, and pardons, and that also by virtue of G.S. 148-58 any prisoner serving a sentence for life "shall be eligible" for a hearing upon application for parole when he has served ten years of his sentence.

However, the presiding Judge properly refrained from so informing the jury of the defendant's eligibility for parole. This is so for the reason that eligibility for parole was not a relevant or proper factor for the jury to consider in arriving at its verdict.

Our statute, G.S. 14-17, which fixes the death penalty for murder in the first degree, now by virtue of Chapter 299, Session Laws of 1949, contains a proviso which directs that "if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

The proviso by its express terms confers on the jury the discretionary right to mitigate the punishment from death to "imprisonment for life in the State's prison." The statute makes no reference, either expressly or by implication, to considerations of parole or eligibility therefor. Consequently, in so far as the jury is concerned, imprisonment for life means, as plainly stated in the statute, "imprisonment for life in the State's prison." As to this, it is to be kept in mind that the power to determine guilt and to assess punishment for crime are functions of the courts, whereas the power of parole is vested exclusively in another branch of the state government—the executive branch. Moreover, punishment is ordinarily assessed against a person convicted of crime on the basis of his acts and conduct prior to trial, whereas parole is determined mainly on the basis of subsequent acts and demeanor. Therefore, in determining guilt and in resolving the question of life imprisonment under the Act of 1949, the question of what afterwards may happen to a prisoner by way of commutation, pardon, or parole is no concern of the jury. It is their duty to determine the question of guilt, and in case of guilt of murder in the first degree to determine whether or not the punishment shall be mitigated from death to "imprisonment for life in the State's prison." The determination of this question of mitigation of punishment should be made by the jury upon the basis of what to them seems just and proper in the exercise of their unbridled discretion (*S. v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212), wholly uninfluenced by speculations as to what

another arm of the government may do in the future by way of commutation, pardon, or parole.

The Judge's original instruction on the question of the right of the jury to recommend imprisonment for life was adequate as an original instruction. It was in accord with the language of the amendatory Act of 1949 and these decisions construing and interpreting the statute: *S. v. McMillan, supra; S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684. This being so, when the jury returned and made inquiry as to eligibility for parole, it may well be that the Judge in telling the jurors he could not answer the question meant thereby to impart to them the idea that eligibility for parole was not a proper factor for them to consider and that they should dismiss it from their minds.

However, while such impression may have been deduced by the jury, it is more probable, we think, that they were left free to speculate on the question of eligibility for parole in arriving at their verdict and in resolving the question of mitigation of punishment. The form of the question indicates unmistakably that a recommendation of life imprisonment was under consideration and that it was being contemplated in the light of possible interference by parole. It is inferable that the jurors had sought without success to settle the question of eligibility for parole on the basis of their own knowledge of parole law and procedure. It is inferable also that there was a division of opinion as to whether the defendant, if given life imprisonment, would become eligible for parole and, if so, when and under what circumstances his eligibility would be determined. It is manifest, we think, that the Judge's response was insufficient to put an end to such speculations in the minds of the jurors. Rather, it would seem the jurors were left to continue to speculate and deliberate on the basis of their own lay information or misinformation concerning vital factors of parole in arriving at their verdict and in fixing the defendant's punishment as between death and life imprisonment. That the speculative factors which were calculated to weigh against recommending life imprisonment prevailed in the jury room is shown by the verdict, which consigned the defendant to death.

It may be conceded as an established rule of law that where, as here, a jury is required to determine a defendant's guilt and also to fix the punishment as between death and life imprisonment, to permit factors concerning the defendant's possible parole to be injected into the jurors' deliberations by argument of counsel or comment of the court is considered erroneous as being calculated to prejudice the jury and influence them against a recommendation of life imprisonment. *S. v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664; *Strickland v. State,* 209 Ga. 65, 70 S.E. 2d 710.

It may be conceded also that if the matters relating to the question of eligibility for parole had been planted in the jurors' minds from outside sources during the course of the trial, such as by comment of the court or by argument of counsel, the duty would have devolved upon the trial court to remove by timely instruction the prejudicial impression created thereby in the minds of the jurors. *S. v. Dockery, supra.*

However, in the case at hand the question of eligibility for parole was not injected into the jury box during the course of the trial. It arose spontaneously while the jurors were deliberating upon the case. But even so, the question raised seems to have become a controversial factor in the deliberations of the jury no less than if it had been planted in the minds of the jurors during the course of the trial.

Thus, the ultimate question is: When the question of eligibility for parole arises spontaneously during the deliberations of the jury, and is brought to the attention of the court by independent inquiry of the jury and request for information, as here, is the judge required to instruct the jury to eliminate such matters from their minds, or does it suffice for him merely to tell the jury he cannot answer the inquiry?

If matters relating to eligibility for parole are not pertinent factors for the jury to weigh in assessing punishment because they are deemed in law to be irrelevant to the issues involved in the case and prejudicial to the interests of the accused, it would seem that the rule which requires the elimination of such matters from consideration by the jury is nonetheless exacting when they are known to arise spontaneously in the jury room than when they derive from sources connected with the progress of the trial. It is the knowledge that irrelevant considerations of a prejudicial nature have entered into the deliberations of the jury, rather than the source of such considerations, that calls the judge to duty.

We are constrained to the view that the Judge's response to the inquiry of the jury was insufficient to remove from their minds prejudicial matters relating to eligibility for parole. While the question propounded. related to considerations which were legally irrelevant to the case and prejudicial to the interests of the defendant, nevertheless it must be conceded that the question so raised reflected a natural trend of lay thinking within the jury room. The question as propounded was logical and reasonable. The Judge's response, "I cannot answer that question," was purely negative.

The jurors should have been given a positive instruction to put the irrelevant question, and matters relating thereto, out of their minds; for example, by having the court reporter read to the jury the pertinent part of the original charge bearing on the question of the right of the jury to recommend life imprisonment under application of the 1949 statutory amendment, and by further instruction in substance as follows: that the

STATE *v.* CONNER.

question of eligibility for parole is not a proper matter for the jury to consider and that it should be eliminated entirely from their consideration and dismissed from their minds; that in considering whether they should recommend life imprisonment, it is their duty to determine the question as though life imprisonment means exactly what the statute says: "imprisonment for life in the State's prison," and that they should resolve the question of mitigation of punishment in the exercise of their unbridled discretion, wholly uninfluenced by considerations of what another arm of the government might do or might not do in the future by way of commutation, pardon, or parole.

For the reasons stated, the defendant is entitled to a new trial. It is so ordered.

New trial.

PARKER, J., dissents.

HIGGINS, J., dissenting: The prisoner was charged with murder in the first degree committed in the perpetration of a robbery. The jury returned a verdict of guilty as charged, without recommendation of life imprisonment. After the judge had delivered a charge, admittedly free from error, and after the jurors had been deliberating for 10 minutes, they returned to the courtroom where the following took place:

Court: The officer informed the court that the jury would like to ask a question. What is it?

Juror Turner: Your Honor, *the points may not deserve an answer, or they might not be relevant,* but we would like to clear them up.

Court: All right.

Juror Turner: Will this defendant be eligible for a parole if he were given life imprisonment?

Court: Gentlemen, I cannot answer that question.

Juror Turner: Thank you. The second question: May we inquire about his previous record?

Court: No, sir, because the defendant's character was not in issue since he did not go upon the stand or place his character in issue; therefore, there was no evidence as to his previous record or his good character or bad character, because he did not place his character in issue; therefore, there is no evidence as to his character, either way.

Juror Turner: Thank you, sir.

The prisoner excepts to the court's answer to the question about eligibility for parole in case of life imprisonment. Since the question was asked, the court was confronted with the necessity either of answering the question or declining to answer it. An answer would have required the court to say the prisoner would be eligible for parole. Constitution of

North Carolina, Article III, Sec. 6; G.S. 147-43; G.S. 148-58. To have told the jury the prisoner would be eligible for parole in the event of life imprisonment would have been error, in my judgment. It was mandatory, therefore, that the court decline to answer the question.

This Court has said the jurors have the right in their unbridled discretion to recommend life imprisonment. The right to refuse to make such a recommendation is equally unbridled. For the judge to have told the jury that the question of parole was no concern of theirs and that they should not consider it tends to put a bridle on discretion. It is perfectly plain, or it seems so to me, the jurors wanted no part of the responsibility of allowing the prisoner again to be at large, arm himself, keep in concealment until some other merchant is alone in his place of business, enter, shoot him down, take his money from the cash drawer and from his pocket, and leave him alone in the agony of death.

I regret I am unable to go along with my brethren in the view the prisoner's rights were prejudiced by the judge's failure to tell the jury that they should not concern themselves with the question of parole. That is merely another way of declining to answer the question.