### STATE v. ALEX RODMAN.

(Filed 10 December, 1924.)

1. **Courts—Discretion of Court—Abuse of Discretion—Homicide—Trials —Appeal and Error.**

   The mere fact that the prisoner, indicted for a capital felony, was forced into the trial at a term being held at the time the offense was alleged to have been committed, does not of itself show, on appeal, that he has thereby been injured by an abuse of the discretion of the trial judge vested in him by law; nor will a new trial be granted on the ground that he had been unable to consult attorneys assigned to him, or prepare his defense, or to ascertain the truth of evidence he had recently discovered, when the circumstances of the case tend to disprove these objections, and when moving for a continuance to a subsequent term, he was vague and indefinite in these respects.

2. **Homicides—Evidence—Declarations.**

   Upon the trial for a homicide, evidence of the declarations of the prisoner tending to incriminate him, made separately to several officers of the law entirely voluntary, and not induced by representations of hope or fear, is competent and admissible.

3. **Same—Murder—Manslaughter—Instructions.**

   Upon a trial for a homicide evidence tending alone to show that the prisoner suddenly killed an officer of the law to escape arrest, with a pistol with which he had previously provided himself while engaged in violation of the prohibition law, and who was temporarily alone with and guarding the prisoner at the time, is, under the circumstances of this case, *held* sufficient for an instruction to convict the prisoner of murder either in the first or second degree, or acquit him; and an exception that the court should have further charged upon the offense of manslaughter, is untenable.

APPEAL by defendant from *Stack, J.,* at February Term, 1924, of MECKLENBURG.

Indictment for murder. Verdict, guilty of murder in the first degree. From judgment upon the verdict as required by law, defendant appealed. Exceptions and assignments of error appear in the opinion below.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. L. Delaney and Frank B. Helms for defendant.*

CONNOR, J. Defendant's first exception is to the refusal of the court to grant his motion for a continuance of the trial. Conceding that this motion was addressed to the discretion of the court, defendant contends that the refusal to grant the motion was a gross abuse of the discretion vested in the court and was therefore error reviewable upon appeal to this Court.

The facts pertinent to the consideration of this exception are as follows: The homicide occurred on Saturday night, 16 February, 1924, in Sharon Township, Mecklenburg County. Defendant was arrested, charged with murder, on Saturday night, 23 February, 1924, and was in custody continuously from the date of his arrest to the date of the trial, 29 February, 1924; during this time he was confined in jails in counties adjoining Mecklenburg; the indictment was returned by the grand jury of Mecklenburg County on 26 February, 1924; defendant was immediately arraigned upon said indictment, and, being without counsel, the court assigned two members of the bar, residents of Mecklenburg County, as his counsel; upon the arraignment, defendant plead not guilty; the case was called for trial on 29 February, 1924, when defendant moved for a continuance. The grounds upon which defendant urged the continuance were: First, that he had been unable to consult with his counsel assigned by the court on 26 February, 1924; second, that he had not had sufficient time between his arrest and the date of the trial to prepare his defense; third, that he desired opportunity to ascertain whether certain evidence recently discovered was true.

The evidence for the State tended to show that at the time of the homicide no one was with or near deceased except the man who shot him; that deceased, an officer, had in his custody a man who had been arrested upon a charge of violating the prohibition laws of the State; that the officer and the man under arrest were strangers to each other; that the homicide occurred during the night-time, some 40 or 50 yards from the home of Sam Cunningham. The State contended that the defendant is the man who was in the custody of the officer immediately before he was shot and killed, and that the defendant fired the pistol which inflicted the fatal wound.

No evidence was offered to the court upon the hearing of this motion that defendant desired the attendance of any witness or witnesses upon whose testimony he relied to support his defense. Defendant did not indicate to the court the character or nature of his defense, in order that the court might determine whether or not he had had sufficient time to

prepare for his trial or whether or not he had in fact consulted with his counsel and advised them of the defense which he desired to make. Defendant offered no evidence from which the court could determine whether or not the evidence which he desired to investigate in order to determine its truth, was material to the defense which the defendant proposed to offer at the trial.

There was no abuse of the discretion vested in the court in refusing the motion for continuance. The first exception is not well taken and this assignment of error is not sustained.

As said by the late *Chief Justice Clark,* in *S. v. Sultan,* 142 N. C., 569, "There is no rule of law or practice that when a bill of indictment is found at one term the trial cannot be had until the next. Whether the case should be tried at that term, which is often done and in many cases required by the public interest and the orderly and economical administration of justice, or whether the case shall go over to the next term, depends upon the nature of the case, of the charge and the evidence, the facility of procuring witnesses and the legal preparation necessary." While the trial of this action involved the gravest consequences to the defendant—his life or death being at issue—the facts in controversy were few and simple and the principles of law applicable elementary and well settled. The circumstances surrounding the homicide were such that the attendance of a large number of witnesses could not be necessary or helpful to defendant. There is nothing in this record to indicate that the defendant was prejudiced by the refusal of the motion to continue the trial to a subsequent term.

The State offered as evidence the testimony of Howard Wilson, a rural policeman of Mecklenburg County. He testified that on the night of 16 February, 1924, accompanied by other officers, in consequence of information received by him, he went to the home of Sam Cunningham in Sharon Township, Mecklenburg County; that the officers found there a large number of persons, 75 or 100, dancing, playing cards and drinking; that he first saw defendant in the house and a few minutes thereafter saw him again, in the field adjoining the house, 40 or 50 yards away; that upon discovering that defendant had a bottle of whiskey upon his person he turned his flashlight upon him and arrested him. John Fesperman, one of the officers present, came to him and he placed the defendant in Fesperman's custody; that he told the defendant that Fesperman, whose badge was pinned on the outside of his coat, was an officer. Witness then left Fesperman and the defendant standing in the field and went in the direction of Sam Cunningham's house. On the way witness arrested a boy who was drunk. When within about 15 yards of the house witness looked back and saw Fesperman and defendant standing where he had left them. He could hear them talking but their

voices were so low that he did not understand what they were saying. Just as he got into the house with the boy whom he had arrested, he heard a pistol shot. He called to Fesperman and receiving no response, ran at once to where he had left him with defendant. As he approached this place he heard some one running through the field and when he arrived there found Fesperman lying upon the ground, on his face, dead, with a bullet wound in his left temple. Fesperman's skull was fractured and his head was blue on the left side. The bullet went in at an angle. There were powder burns on his face all around where the bullet entered into his head. Fesperman's pistol and scabbard were on his right side under his coat. Defendant was not there. Not a minute had elapsed between the time witness heard the pistol fire and the time he got to Fesperman. When witness arrested defendant he turned his flashlight upon him and searched him for weapons. He found no weapon on his person. Witness testified: "I am just as certain as I am that I am here, that defendant is the man I arrested and turned over to John Fesperman. I know, because he has the same lips, the same face—the same looking negro. I am just as certain he is the same man as I can be."

W. B. Orr, chief of police of the city of Charlotte, testified that he arrested the defendant on Saturday night, 23 February, 1924; that on the same night at the city hall, defendant made a statement to him. Defendant objected in apt time to the testimony of this witness as to any statement made to him by defendant, on the ground that same was not voluntary. Objection overruled and defendant excepted.

M. R. Alexander, sheriff of Iredell County, testified that after his arrest, defendant was put in his custody and taken by him to the jail in Iredell County; that while in said jail, defendant made a statement to him. Defendant objected in apt time to the testimony of this witness as to any statement made to him by the defendants on the ground that same was not voluntary. Objection overruled and defendant excepted.

Clifford Fowler, sheriff of Union County, testified that after his arrest and while awaiting trial, defendant was a prisoner in the jail of Union County. That while there defendant made a statement to him. Defendant objected in apt time to the testimony of this witness as to any statement made to him by the defendant on the ground that same was not voluntary. Objection overruled and defendant excepted.

Each of the witnesses whose testimony, as to statements made to him by the defendant, was admitted by the court testified that he made no threats and offered no inducements to defendant to make a statement and that the statement made to the witness by defendant was voluntary on his part. There is no evidence that any threat was made or inducement offered to defendant to make any of the statements offered by the

State as confessions of the defendant. The court found that each statement was voluntary and therefore competent as evidence on the part of the State and against the defendant. The fact that defendant was under arrest and in custody at the time he is alleged to have made the statements to these witnesses, does not render them incompetent as evidence.

This Court has held consistently and uniformly that statements made by defendant, although in custody or in jail, are competent if made voluntarily and without any inducement of hope or fear. In *S. v. Christy,* 170 N. C., 772, *Clark, C. J.,* says: "It is also well settled that whether a statement is voluntary is a preliminary question of fact and that the finding of the judge cannot be reviewed if there is any evidence to sustain it; *S. v. Page,* 127 N. C., 512. A confession is deemed to be voluntary unless the party against whom it is offered shows facts to the contrary; *S. v. Sanders,* 84 N. C., 728." There was no evidence that either of the statements made by defendant, testified to by witnesses for the State, was involuntary or induced by hope or fear. The exceptions of the defendant are not sustained.

The statements made by the defendant at different times and in different places to the several witnesses offered by the State are substantially the same. The defendant said that after Officer Wilson left him in the field some distance from Cunningham's house, in the custody of Fesperman, he shot Fesperman who was holding him. Defendant had his pistol stuck down in his pants and pulled it out; as he did so Fesperman grabbed him and after striking him several times on the head, he shot him. Fesperman crumpled and fell to the ground and defendant ran across the field, later going to the home of his uncle, Guy Hope. Defendant further stated that he was at Sam Cunningham's house on that night and when he discovered that the officers were in the house, he went out and hid his pistol under the steps. He later got his pistol and was out in the field when Officer Wilson arrested him. After Wilson left him in the custody of Officer Fesperman he decided to get away from him and that was his reason for shooting the officer.

There was evidence also that after defendant made his statement to Chief of Police Orr, he was taken to the home of his uncle, Guy Hope. Hope was asked by one of the officers to produce defendant's pistol. He hesitated and thereupon defendant told his uncle to give the pistol to the officer, for he had already confessed all about it. Thereupon Guy Hope, in the presence of defendant, stated that on the night of 16 February, 1924, defendant came to his home and told him that he had killed a police officer.

In the charge to the jury the court instructed them as follows: "Hence, gentlemen of the jury, if the State has satisfied you beyond

a reasonable doubt that Alex Rodman killed John Fesperman with a pistol or other deadly weapon, but has failed to satisfy you that he did so with premeditation and deliberation as I have heretofore defined these terms, then your verdict would be guilty of murder in the second degree and if the State has failed to satisfy you fully that Alex Rodman fired the fatal shot which resulted in the death of John Fesperman, then it would be your duty to render a verdict of not guilty. The court instructs you that there is no evidence of the crime of manslaughter in this case—so your verdict will be one of three, guilty of murder in the first degree, guilty of murder in the second degree, or not guilty."

To this instruction defendant excepted. Defendant contends that there was evidence from which the jury could have found facts in support of a verdict of guilty of manslaughter. We have examined all of the evidence set out in the case on appeal and are unable to discover any evidence to sustain this exception. It is true that there is some evidence that one of the officers slapped the defendant while he was in the house of Sam Cunningham. There is no evidence as to which of the officers did this nor is there any evidence of any conduct on the part of Fesperman while defendant was in his custody, or before, which mitigated or tended to mitigate the act of defendant in shooting Fesperman with a pistol.

The charge of the court in this case was unusually clear, full and accurate, showing on the part of his Honor a keen appreciation of the responsibility resting upon him as the presiding judge at this trial. None of the exceptions can be sustained. The defendant has had a fair and impartial trial. The verdict of the jury is amply sustained by the evidence and is fully supported by the law applicable to the facts which the evidence tends to establish. The judgment must be affirmed. There is

No error.