### STATE v. MILFORD EXUM.

(Filed 2 February, 1938.)

**1. Criminal Law § 33—Mere presence of officers does not render confession involuntary.**

The evidence disclosed that defendant was imprisoned in jail in another county, that the sheriff and his deputies visited him, told him their investigations indicated he had information as to the circumstances under which the crime was committed, and urged defendant to tell what, if anything, he knew about the crime, that thereafter defendant stated that if the officers would take him to his home where he could see and confer

with relatives, he would tell all he knew about the crime, that the sheriff agreed, and that while on the trip in a car with the officers, defendant made the confession. *Held:* The evidence supports the finding of the court that the confession was voluntary, without evidence to the contrary, the mere presence of officers not being sufficient to render a confession involuntary.

2. **Arrest and Bail § 4—In absence of request by defendant, detention of defendant without permitting counsel to see him is not unlawful.**

Where defendant is informed immediately after his arrest that he is charged with the murder of a named person, and defendant makes no request to be allowed to communicate with friends or counsel, the arrest and detention of defendant without permitting friends or counsel to communicate with him does not constitute a violation of ch. 257, Public Laws of 1937.

3. **Arrest and Bail § 5—**

When defendant is arrested pending investigation on a capital charge, the officer making the arrest is not required to have bail fixed. Ch. 257, Public Laws of 1937.

4. **Criminal Law § 33—**

The violation of ch. 257, Public Laws of 1937, in regard to bail and the manner of detention of defendant under arrest, would not render defendant's voluntary confession incompetent.

5. **Criminal Law § 34d—**

Evidence tending to show that defendant, after his arrest and while in the custody of officers, attempted suicide by drinking poison, is competent.

6. **Criminal Law § 79—**

Contentions of counsel that defendant did not have a fair trial in the court below need not be considered when they are not supported by the record, and no authorities are cited in the brief and no reasons given in the argument in support of the contentions.

7. **Homicide § 25—**

Evidence in this case *held* sufficient to support the contentions of the State that defendant shot and killed deceased in the perpetration of a robbery, and therefore was guilty of murder in the first degree. C. S., 4200.

APPEAL by defendant from *Grady, J.,* at August Term, 1937, of WAYNE. No error.

At May Term, 1937, of the Superior Court of Wayne County, the defendant Milford Exum and Earl Sasser were indicted, each by a separate indictment, for the murder, in Wayne County, North Carolina, on 2 April, 1937, of James Williams.

At August Term, 1937, of said court the defendant Milford Exum and the said Earl Sasser were each duly arraigned on said separate indictments. Each entered a plea of not guilty. Without objection, and in its discretion, the court ordered that said separate indictments be consolidated for trial. The defendant Milford Exum and the said

Earl Sasser were thereupon tried on said consolidated indictments for the murder, in Wayne County, North Carolina, on 2 April, 1937, of James Williams.

There was a verdict that both the defendant Milford Exum and the said Earl Sasser are guilty of murder in the first degree.

On motion of Earl Sasser, the verdict as to him was set aside by the court. Thereafter, the said Earl Sasser tendered to the court a plea of guilty as an accessory before the fact to murder in the first degree. C. S., 4175. With the approval of the solicitor for the State, this plea was accepted by the court. The said Earl Sasser did not appeal from the judgment on his plea that he be confined in the State's Prison for his life, as required by statute. C. S., 4176.

The motion of the defendant Milford Exum that the verdict as to him be set aside and that he be granted a new trial was denied by the court.

From judgment on the verdict, as required by statute, C. S., 4200, that he suffer death by means of asphyxiation, as provided by statute, C. S., 4658, as amended (see N. C. Code of 1935, section 4658), the defendant Milford Exum appealed to the Supreme Court, assigning errors in the trial and judgment.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*Paul D. Grady, Paul B. Edmundson, and Hugh Dortch for defendant.*

CONNOR, J. On or about 2 April, 1937, Paul Garrison, sheriff of Wayne County, was informed at his office in the city of Goldsboro, N. C., that James Williams, an elderly colored man, who lived alone at his home in Wayne County, some distance from the city of Goldsboro, had not been seen at his home or in the neighborhood for several days, and that apprehension was felt by his neighbors as to his whereabouts. In consequence of this information, the sheriff went at once to the home of James Williams. He found that the door of the house in which James Williams lived was locked, and that there was no one in the house. He entered the house and found that the bedclothes had been dragged from the bed in the room which James Williams occupied as his bedroom. They were on the floor of the room. The furniture in the room was broken, and scattered about the room. Papers were scattered on the floor. On the floor and under the bedclothes there was a considerable amount of dried blood. Two empty pistol cartridges were found on the floor in the room. Both cartridges were .25 calibre cartridges, such as are used in an automatic pistol. The condition of the room showed that someone, after a fierce struggle, had been shot and wounded in the room. The sheriff closed the house, and with his deputies

searched the premises and the surrounding woods for James Williams. He was not found. After the search, the sheriff returned to the city of Goldsboro, but continued his investigation to ascertain the whereabouts of James Williams.

About two weeks after James Williams had disappeared from his home in Wayne County, his dead body was found in Little River, in Johnston County, about eight miles from his home. When the body was taken from the river, it was wrapped in a sheet. A heavy iron bar was tied to the body with a rope. The body was taken to an undertaker's place of business in Goldsboro where an examination disclosed wounds on the head and near the spinal column. Two bullets were taken from the head, and one from the body. These bullets were from .25 calibre cartridges which had been fired from an automatic pistol. The wounds caused by these bullets caused the death of James Williams.

After the body of James Williams was found in Little River, in consequence of information disclosed by his investigations, the sheriff of Wayne County went to the home of the defendant Milford Exum, which is a short distance from the home of James Williams, and there arrested the defendant Milford Exum, Earl Sasser, and Tinker Holland, three young white men, and charged them with the murder of James Williams. He did not procure a warrant for these men, but took them to Goldsboro, where they were held in custody pending further investigation by the sheriff. The next day after his arrest, the defendant Milford Exum was taken by the sheriff to Snow Hill, in Greene County, where he was placed in jail.

While the defendant was confined in jail at Snow Hill, his relatives and friends employed counsel for him, and inquired of the sheriff where the defendant was confined. The sheriff declined to give them any information as to where the defendant was confined, but told them that the defendant was in his custody. He refused to permit counsel employed by relatives and friends of the defendant in his behalf to confer with the defendant or to see him, until after a writ of *habeas corpus* had been served on him by the coroner of Wayne County. The writ of *habeas corpus* was issued on the application of counsel employed by relatives and friends of the defendant.

After the defendant had been placed in jail at Snow Hill, and while he was confined in said jail, the sheriff and his deputies visited him on several occasions. They told him the results of their investigation of the death of James Williams and that said investigations had disclosed facts which indicated that the defendant had information as to circumstances under which the homicide was committed. They urged the defendant to tell them what, if anything, he knew about the homicide. After he had been confined in the jail at Snow Hill for several days, the defendant

told the sheriff that if he would take him from the jail to his home in Wayne County, where he could see and confer with relatives and friends, he would tell all he knew about the homicide. This the sheriff agreed to do.

Accordingly, the sheriff took the defendant from the jail in Snow Hill and carried him in his automobile to his home in Wayne County. The sheriff and his deputies who were in the automobile with the defendant each testified that while on the trip the defendant made statements to them, and in their presence, with respect to the homicide.

. Counsel for defendant, in apt time, objected to any testimony by the sheriff or by his deputies as to any statement made to them, or to either of them, or in their presence, by the defendant with respect to the homicide, on the ground, first, that no statement in the nature of a confession made by the defendant while he was in the custody of the sheriff was admissible as evidence against him, because such statement was involuntary on the part of the defendant, and, second, that no statement in the nature of a confession, made by the defendant, while he was in the custody of the sheriff, was admissible as evidence against him, because such statement was made by the defendant while he was held in custody by the sheriff in violation of chapter 257, Public Laws of North Carolina, 1937.

The objections of the defendant to testimony of the sheriff and his deputies tending to show that the defendant made statements to them in the nature of confessions, were overruled by the court, and the defendant duly excepted.

The sheriff and certain of his deputies thereupon testified that while he was on the trip with them, in the sheriff's automobile, from Snow Hill to his home in Wayne County, the defendant told them that on the night of 2 April, 1937, he and Earl Sasser went to the home of James Williams in defendant's Ford automobile; that when they arrived at James Williams' house they called to him and that he opened the door for them; that they went into his house and told James Williams that they wished to borrow some money from him; that James Williams refused to lend them the money; that they ordered him to open his safe, which was in the room; that he opened the safe and at once started to his bed where the defendant knew he kept his pistol; that before he got to his bed the defendant shot him with his .25 calibre automatic pistol; that the first shot did not kill him; that he staggered and fell to the floor, and that defendant shot him again; that after he was dead Earl Sasser left and went to his home and soon returned to James Williams' home, bringing with him a sheet, an iron bar, and a rope; that they wrapped the sheet about the body of James Williams and tied the iron bar to his body with the rope; that they placed the

body in the rear of defendant's automobile, and drove with it some distance to a river; and that when they came to the river they took the body from the automobile and threw it into the river.

The defendant further stated to the sheriff and to his deputies that both he and Earl Sasser were drunk on the night they went to the home of James Williams, and were drunk when defendant shot and killed the deceased; and that after he shot and killed James Williams, he and Earl Sasser took $4.00 from his safe, which they divided between them.

After the sheriff and his deputies, with the defendant, arrived at the home of the defendant in Wayne County, they all went to a filling station, which was owned and operated by the defendant. While they were in the filling station the defendant drank a bottle of Coca-Cola, in which he had put a large quantity of paris green. The defendant was taken to a hospital at Goldsboro, where the paris green was pumped from his stomach by a physician. There was evidence tending to show that the defendant drank the paris green with suicidal intent. The defendant objected to the admission of this evidence. His objection was overruled, and defendant duly excepted.

Neither the defendant Milford Exum nor Earl Sasser testified at the trial. They offered evidence tending to show that both had been drinking intoxicating liquor to excess for several months prior to the homicide, and for that reason that neither of them was capable of such premeditation and deliberation as constitutes one element of the crime of murder in the first degree, as defined by statute. C. S., 4200.

There is no evidence in the record in this appeal which supports the contention of the defendant that there was error in the admission of testimony by Sheriff Garrison and his deputies tending to show statements made by the defendant to them or in their presence in the nature of a confession.

All the evidence shows, and the court so found, that the statements made by the defendant to the sheriff and his deputies, or in their presence, although made by him while he was in the custody of the sheriff, were voluntary on the part of the defendant. There was no evidence to the contrary.

In *S. v. Stefanoff,* 206 N. C., 443, 174 S. E., 411, it is said: "Where there is no duress, threat or inducement, and the court found there was none here, the fact that the defendants were under arrest at the time the confessions were made, does not *ipso facto* render them incomptent. *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187; *S. v. Drakeford,* 162 N. C., 667, 78 S. E., 308. We are not aware of any decision which holds a confession, otherwise voluntary, inadmissible because of the number of officers present at the time it was made. Nor has the diligence of counsel discovered any. *S. v. Gray,* 192 N. C., 594, 135 S. E., 555."

In *S. v. Rodman,* 188 N. C., 720, 125 S. E., 486, it is said:

"This Court has held consistently and uniformly that statements made by a defendant, although in custody or in jail, are competent, if made voluntarily, and without any inducement of hope or fear."

The detention of the defendant by the sheriff pending his investigation of the death of James Williams was not in violation of chapter 257, Public Laws of North Carolina, 1937.

The statute reads as follows:

"Section 1. That upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State, with or without a warrant, it shall be the duty of the officer making the arrest to immediately inform the person arrested of the charge against him, and it shall further be the duty of the officer making said arrest, except in capital cases, to have bail fixed in a reasonable sum, and the person so arrested shall be permitted to give bail bond; and it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and friends immediately and the rights of such persons to communicate with counsel and friends shall not be denied.

"Sec. 2. That any officer who shall violate the provisions of this act shall be guilty of a misdemeanor and shall be fined or imprisoned, or both, in the discretion of the court.

"Sec. 3. This act shall be in full force and effect from and after its ratification."

The act was ratified on 20 March, 1937.

The evidence at the trial shows that immediately after his arrest, the defendant was informed by the sheriff that he was charged with the murder of James Williams. This is a capital case. For this reason the provisions of the statute with respect to bail are not applicable to this case.

There is no evidence in the record tending to show that after his arrest and while he was in the custody of the sheriff the defendant demanded of the sheriff that he be permitted to communicate with friends or with counsel. For this reason the provisions of the statute with respect to the right of a defendant in the custody of an officer and charged with the commission of a crime, to communicate with friends and counsel are not applicable to this case.

Conceding, however, that the sheriff had violated the provisions of the statute, in the instant case, it would not follow that a voluntary confession made by the defendant to the sheriff would be inadmissible as evidence because of such violation. It is not so provided in the statute.

There was no error in the admission of evidence tending to show that after his arrest and while he was in the custody of the sheriff, the defendant attempted to commit suicide by drinking paris green. See *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395.

No exceptions to the charge of the court to the jury appear in the statement of the case on appeal. A careful reading of the charge set out in the record fails to disclose any error.

The contentions of counsel for the defendant discussed in their brief filed in this Court that the defendant has not had a fair and impartial trial in the Superior Court of Wayne County are not supported by the record in this appeal and require no comment in this opinion. No authorities are cited in the brief in support of these contentions, nor were any reasons given or arguments made by counsel to sustain these contentions. Rule 28, 200 N. C., 831.

There was ample evidence at the trial of this action to support the contention of the State that the defendant shot and killed James Williams, as alleged in the indictment, in the perpetration of a felony, to wit, a robbery, and that he is for this reason guilty of murder in the first degree as defined by the statute. C. S., 4200. The jury so found at a trial free from error. The judgment is supported by the verdict and is affirmed.

No error.