STATE *v.* BIGGS.

STATE v. ELMER HARDIE BIGGS, JR., WILLIAM DALTON BIGGS AND JOHN EDGAR MESSER.

(Filed 1 March, 1944.)

1. **Criminal Law § 33—**

In a criminal prosecution, where statements in the nature of confessions have been made by defendants, if the evidence in respect of the voluntariness of the statements were merely in conflict, the court's determination would be conclusive: however, what facts amount to such threats or promises as make confessions not voluntary and admissible in evidence is a question of law, and the decision of the court below can be reviewed.

2. **Same—**

Where a person in authority offers some suggestion of hope or fear to one suspected of crime and thereby induces a statement in the nature of a confession, such statement is involuntary in law and incompetent as evidence.

3. **Same—**

A free and voluntary statement in the nature of a confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, but any statement wrung from the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration.

4. **Same—**

Confessions are to be taken as *prima facie* voluntary, and admissible in evidence, unless the party against whom they are offered alleges and shows facts authorizing a legal inference to the contrary.

5. **Same—**

Where three boys from 19 to 20 years of age were imprisoned in Virginia under a charge of highway robbery, and on numerous occasions

STATE *v.* BIGGS.

officers from this State visited these boys and questioned them in regard to a charge of murder made against them here, the final visit consuming the greater part of two days, and the accused constantly refuse to 'make any statement, but finally the officers told the boys "they were liable to pay the death penalty in Virginia" and that in North Carolina "as to what will be done with you will be left to the jury and the court," whereupon, after a few minutes consultation among themselves, the boys made statements in the nature of confessions. *Held:* Such statements were involuntary and are incompetent as evidence.

DEVIN, J., dissenting.

SCHENCK and SEAWELL, JJ., concur in dissenting opinion.

APPEAL by defendants from *Burgwyn, Special Judge,* at May Term, 1943, of GUILFORD.

Criminal prosecution tried upon indictment charging the defendants with the murder of one E. J. Swanson.

There is evidence tending to show that on the night of 19 February, 1943, between 8:30 and 9:00 p.m. the three defendants (two brothers, one 20 years of age, the other younger, and the third 19 years old) appeared in an automobile near E. J. Swanson's store and filling station at Jamestown, N. C. They tried to stage a hold-up and robbery. Elmer Hardie Biggs, Jr., remained at the wheel while the other two defendants entered the store. In executing the plan, John Edgar Messer shot Swanson and killed him. The two defendants then "broke and ran out the door." They re-entered the automobile, which was waiting on the outside, and all three of the defendants made a get-away. They were next discovered, 19 March, in jail in Danville, Va., there charged with having committed highway robbery in that State on 16 March, 1943.

On several occasions between 19 and 31 March, various officers of Guilford County and Messrs. H. W. Zimmerman and Guy L. Scott of the State Bureau of Investigation went to Danville and questioned the defendants in regard to the Swanson murder. They stated on each occasion that they had no statement to make; that they desired to talk with an attorney, and they denied any connection with the crime until 31 March, when about a dozen witnesses and officers from this State, including the Solicitor of the 12th Judicial District, were in Danville, and the defendants, on this last day, after conferring among themselves, told the officers that they had planned to rob the Swanson store on the night of 19 February, and in doing so Mr. Swanson was shot.

No charges had been preferred against the defendants in this State at the time, and their statements were not reduced to writing.

The defendants testified on the *voir dire* that they were induced to make their statements in the nature of confessions because "Mr. Zimmerman and Mr. Wilson, the solicitor, came back, and he told us he was

going to put this bill of indictment for second degree murder which carried a penalty of twenty-five to thirty years in our home State and at most, in all probability, we would be out in five years. . . . Mr. Wilson and Mr. Zimmerman both made that statement."

The officers denied that any such inducements or offers were made to the defendants, and the solicitor testified that he went to Danville to make sure that no unfair method was employed by anyone in undertaking ·to identify the perpetrators of the Swanson murder.

Aside from the contradictory evidence, heard . on the preliminary inquiry, of which there was quite a bit, the following undisputed testimony is culled from the record and the State's witnesses:

Deputy Sheriff Ray Nance: "By the Court: Was your purpose in going there together with the solicitor and all of you to obtain a confession from these men?

"The witness: I wouldn't say that was our direct purpose there. . . . We were asking them to make a statement. . . . They asked to be permitted to talk together, and they were permitted to talk together, and after that they made a statement."

A special agent for the State Bureau of Investigation, H. W. Zimmerman, testified that he told the defendants "they had been arrested on a charge in the State of Virginia for which the penalty was life imprisonment or the electric chair. . . . A part of my scheme was to tell them that under the law in Virginia they were liable to pay the death penalty. I told them it was a capital offense in Virginia. . . . I told Elmer Hardie Biggs that I didn't like the word confession; that we were not trying to get a confession out of them. I wanted the truth. . . . You can call it a confession. I call it the truth. . . . When I went in the room where all three of the defendants were, Elmer Biggs asked the question something about first degree and second degree charge in North Carolina. If I remember correctly, I think I said, 'If you three boys are charged with the murder of Mr. Swanson, . . . the solicitor will draw a bill for murder in the first degree. . . . As to what will be done with you will be left to the jury and the court. . . . After that, the request was made that the two Biggs boys be permitted to talk to Messer alone. The request was granted, and they went into the room where Messer was and were there three to five minutes. Elmer Hardie Biggs came out and called for Ray Nance. Mr. Nance and myself, Mr. Jones, Ballinger, Donovant and Mr. Watts went into the room where these three boys were, and John Messer made a statement in the presence of the two Biggs boys.' . . .

"By the Court: Can you give me any satisfactory answer why these three young men or two young men, or any one of them, would sit there, after having stated time and time again that they had no statement to

make, and would all of a sudden turn around and say, 'I want to make a statement that will hang me'? A. Your Honor, I cannot. Q. I cannot understand that."

Elmer Hardie Biggs, Jr., one of the defendants, testified on the *voir dire:* "Mr. Zimmerman said, 'What I can't understand is why,' he was hitting the desk all the time, he said, 'I can't understand why an intelligent young man like you, why you can't see the difference in twenty-five to thirty years in your home State and life imprisonment at the best in another State than your own.'" The witness Zimmerman, though present, was not recalled on the preliminary inquiry to deny or to refute this statement.

Upon all the evidence heard in the absence of the jury the trial court held the statements to be voluntary and admitted them in evidence. Exception.

Verdict: Guilty of murder in the first degree as to each defendant.

Judgments: Death by asphyxiation as to each defendant.

The defendants appeal, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*P. W. Glidewell, Sr., for defendant William Dalton Biggs, appellant.*

*Robert R. King, Jr. (appointed by the court) for defendants John Edgar Messer and Elmer Hardie Biggs, Jr., appellants.*

STACY, C. J. The question for decision is whether the statements in the nature of confessions made by the defendants were properly admitted in evidence. *S. v. Exum,* 213 N. C., 16, 195 S. E., 7. The answer depends on whether the law pronounces them voluntary or involuntary. *S. v. Farrell,* 223 N. C., 804.

It is conceded that if the evidence in respect of the voluntariness of the statements were merely in conflict, the court's determination would be conclusive on appeal. *S. v. Hairston,* 222 N. C., 455, 23 S. E. (2d), 885; *S. v. Smith,* 221 N. C., 400, 20 S. E. (2d), 360; *S. v. Whitener,* 191 N. C., 659, 132 S. E., 603; *S. v. Christy,* 170 N. C., 772, 87 S. E., 499; *S. v. Page,* 127 N. C., 512, 37 S. E., 66; *S. v. Burgwyn,* 87 N. C., 572. Equally well established, however, is the rule that "what facts amount to such threats or promises as make confessions not voluntary and admissible in evidence is a question of law, and the decision of the judge in the court below can be reviewed by this Court." *S. v. Andrew,* 61 N. C., 205; *S. v. Manning,* 221 N. C., 70, 18 S. E. (2d), 821; *S. v. Crowson,* 98 N. C., 595, 4 S. E., 143. And further, where a "person in authority" offers some suggestion of hope or fear, *S. v. Livingston,* 202 N. C., 809, 164 S. E., 337; *S. v. Grier,* 203 N. C., 586, 166 S. E., 595,

to one suspected of crime and thereby induces a statement in the nature of a confession, the decisions are at one in adjudging such statement to be involuntary in law, and hence incompetent as evidence. *S. v. Anderson,* 208 N. C., 771, 182 S. E., 643; Annotation 7 A. L. R., 423.

What are the effective considerations here?

The defendants were in jail at Danville, Virginia, under a charge of highway robbery committed in that State on 16 March, 1943. Officers from this State went to Danville to interrogate them in respect of the Swanson murder at Jamestown, North Carolina, on the night of 19 February, 1943. They were questioned on a number of occasions, including at the end the greater part of two days, 30 and 31 March, and they repeatedly told the officers they had no statement to make in respect of the Swanson case. Finally, they made the statements in the nature of confessions as above set out. Over objections, these statements were admitted in evidence against them.

A free and voluntary statement in the nature of a confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, but any statement wrung from the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration. *S. v. Patrick,* 48 N. C., 443; *S. v. Roberts,* 12 N. C., 259. "Confessions are to be taken as *prima facie* voluntary, and admissible in evidence, unless the party against whom they are offered allege and show facts authorizing a legal inference to the contrary"—*Dillard, J.,* in *S. v. Sanders,* 84 N. C., 729; *S. v. Alston,* 215 N. C., 713, 3 S. E. (2d), 11; *S. v. Grass,* 223 N. C., 31, 25 S. E. (2d), 193.

As bearing upon the influence which produced the defendants' statements in the nature of confessions, whether prompted by the love of truth or induced by hope or fear, the record poses the following pertinent inquiries: Why was it a part of Zimmerman's "scheme" to tell the defendants "they were liable to pay the death penalty" in Virginia? Why did he tell them that in North Carolina "as to what will be done with you will be left to the jury and the court"? What impression did he intend to leave by these statements? Just before the admissions were made, Elmer Biggs wanted to know "something about first degree and second degree charge in North Carolina." He had already been informed "that under the law in Virginia they were liable to pay the death penalty." Where did Elmer Biggs, a boy 20 years of age, get his knowledge of criminal procedure in this State and the idea that under the North Carolina law, second degree murder carries a maximum penalty of 30 years, and, in addition, the parole system obtains here? What was the purpose of discussing these considerations in connection with the Virginia statute (Va. Code 1942, sec. 4405), which prescribes death or

life imprisonment as punishment for robbery with firearms? What bearing could they have had on the Swanson murder, except to induce an expression on the subject different from the repeated protestations of the defendants that they had no statement to make in respect of the matter?

We think the statements in the nature of confessions made by the defendants must be regarded as arising out of circumstances which render them involuntary, and, therefore, incompetent as evidence. The decision in *S. v. Livingston, supra,* and the cases there cited, would seem to be in direct support of the position. To say that no inducement was offered by "those in authority" would be to deny the natural import of the language used and the suggestions made, and withal the situation created by the presence of the solicitor. The effort of the trial court to obtain some satisfactory explanation of the sudden change on the part of the defendants appears to have been fully justified. The case is equally as strong, if not stronger, than *S. v. Anderson, supra,* where a new trial was granted because of similar suggestions made by a State's witness.

It is true, there is ample evidence to convict the defendants without their statements in the nature of confessions. But this in no way affects the competency or materiality of the statements. They undoubtedly weighed heavily against the defendants. The law commands the death penalty only after a hearing free from error.

On the record as presented, a new trial seems necessary. It is so ordered.

New trial.

DEVIN, J., dissenting: It was within the province of the trial judge to determine whether the admissions of guilt on the part of the defendants, offered in evidence, were voluntarily made, or were induced by promises of leniency. This was a preliminary question of fact for his decision. Before ruling thereon, in accord with correct procedure, in the absence of the jury, the judge heard all the testimony of the defendants and of the State's witnesses bearing on the competency of this evidence. He was in position to judge of the credibility of those who deposed in his presence. It was his duty to determine and to declare the fact. As the result of his careful consideration of this testimony, he has found the fact to be that the admissions of guilt were voluntarily made.

The only ground upon which this Court can reverse the judge's finding is that there was no evidence to support it. As the jurisdiction of this Court on appeal is confined to matters of law or legal inference (Art. IV, sec. 8), the only matter of law presented is whether there was any evidence to sustain the ruling appealed from.

This principle was stated by *Justice Reade* in *Cardwell v. Cardwell,* 64 N. C., 621, as follows: "We can no more review the finding of a judge when it is his province to find facts than we can review the finding of a jury." In *S. v. Andrew,* 61 N. C., 205, *Chief Justice Pearson* said: "So, whether there be *any evidence* tending to show that confessions were not made voluntarily, is a question of law. But whether the evidence, if true, prove these facts, and whether the witnesses giving testimony to the court touching the facts are entitled to credit or not, and in case of a conflict of testimony which witness should' be believed by the court, are questions of fact to be decided by the judge, and his decision cannot be reviewed in this Court." In *S. v. Fain,* 216 N. C., 157, 4 S. E. (2d), 319, the rule was stated in this language: "It is the established procedure with us that the competency of a confession is a preliminary question for the trial court, to be determined in the manner pointed out in *S. v. Whitener,* 191 N. C., 659, 132 S. E., 603, and the court's ruling thereon will not be disturbed, if supported by any competent evidence." And in the recent case of *S. v. Hairston,* 222 N. C., 455, 23 S. E. (2d), 885, it was again declared to be the law that "The competency of a confession is a preliminary question for the trial court, and the court's ruling will not be disturbed if supported by any competent evidence."

Applying these well settled rules to the case at bar, I am unable to agree with the conclusion reached in the majority opinion. A careful consideration of all the testimony heard by the judge below leads me to the conclusion that there *was* evidence to support his finding. True, there was a conflict in the testimony, but it was the judge's province to determine the fact upon the preliminary question presented. I think he should be upheld.

Each of the three defendants in the hearing before the judge stated they were induced to confess by the promise made to them by Mr. Wilson, the State Solicitor, and by Mr. Zimmerman, a member of the State Bureau of Investigation, that if they would admit their guilt, the Solicitor would "put in" a bill of indictment for second degree murder and they would get 25 to 30 years, and in all probability would be out in five years. But these statements were denied by both Mr. Zimmerman and Mr. Wilson. Zimmerman testified, "No one in my presence made any threat against the defendants before they made a statement, nor were any promises made or offers to extend any leniency to them, and no one said anything to them about what they would be tried for except murder in the first degree." He further said, "I made no promise of any kind to them as to how the charge against them would be handled." True, this officer in the course of a prolonged cross-examination by two attorneys used the word "scheme" in referring to his purpose in questioning the defendants and stating (correctly it seems) that the crime for which

they were in jail in Virginia was a capital felony in that state, but this word, to which a sinister significance is attributed, was apparently suggested by the questioner rather than chosen by the witness, for in the same connection he said his purpose was *not* to get a confession nor to induce them to come to North Carolina. He repeatedly said no promises of leniency were made. I do not think this single expression, in whatever sense it was used, should be held in law or in fact sufficient to nullify or contradict his previous testimony. *Hadley v. Tinnin,* 170 N. C., 84, 86 S. E., 1017.

Mr. Wilson testified that no promises of leniency were made, but that on the contrary he warned the defendants they would be tried for murder in the first degree, and, if they were not guilty, not to make any statement.

Deputy Sheriff Nance testified the defendants were advised that any statement made by them would or could be used against them, and that "no threat or reward or promise or anything else was made." One of the defendants testified: "I don't claim Mr. Donovant, Mr. Jones, Mr. Nance or Mr. Scott or any other officer made any promises or threats that caused me to make the statement which I made over there," but asserted he was induced only by the proposition made by the Solicitor in the presence of Mr. Zimmerman, as previously noted.

It is worthy of note that at no time have the defendants denied their guilt. Neither in response to the questioning officers, nor in their statements to the judge did either of them deny they were the ones who shot Mr. Swanson to death. They refused to make any statement to the officers until after they had been identified by four eye-witnesses of the crime. Here was the situation: On the night of 19 February, 1943, Mr. Swanson, in his little store in the village of Jamestown, in the presence of his wife and a friend, was shot to death by two young men in the attempt to hold up and rob him. A third man waited in a car outside. Two other witnesses saw the two men run out of the store after the shooting and get in the car, and saw the third man under the wheel as they drove away. A few weeks afterwards three men answering their general description were arrested in Danville, charged with the robbery with firearms in Virginia (holding up a filling station). The North Carolina officers went to Danville and questioned the suspects. They refused to make any statement. Then the four witnesses from Jamestown were taken to Danville to see if these suspects were the ones they had seen in Jamestown. These witnesses identified the defendants— picked them out of a group of other prisoners—and told them they recognized them. Shortly thereafter, and after the three defendants had privately conferred together, they admitted their participation in the crime.

The fact that the defendants were young men (one of them was 24, record, page 47), may not be considered as tending to render their confessions inadmissible in evidence on that ground. There is no suggestion they were not *sui juris* and in all respects competent. Their being charged with two capital felonies in different states would naturally lead them to inquire what could be done with them. According to the record, the officers informed them correctly. They were told that under the Virginia law they could be sentenced to the electric chair or life imprisonment; that in North Carolina they would be tried for murder in the first degree, and it was for the jury and the court to say what would be done with them. That might be considered as reason for waiving extradition, but not for confession. The officers testified no promises of leniency were made them, and the judge so found. In *S. v. Livingston,* 202 N. C., 809, 164 S. E., 337, the officer admitted he told the defendants if they would tell "it would be lighter on them"; and in *S. v. Anderson,* 208 N. C., 771, 182 S. E., 643, the State's witness admitted he told defendant Overman "it would be better for him to go ahead and tell it." But in the case at bar the record discloses no admissions by any State's witness that inducements of this nature were held out to the defendants.

At the time the defendants were being questioned they were not in the custody of the North Carolina officers but in jail in Virginia. But, in any event, neither the fact that they were in custody, nor the number of officers present (*S. v. Stefanoff,* 206 N. C., 443, 174 S. E., 411), nor that they were persistently questioned (*S. v. Exum,* 213 N. C., 16, 195 S. E., 7), would be alone sufficient to render the confessions incompetent, unless the admissions were in fact induced by promises of leniency or some form of compulsion.

I think that the testimony of the State's witnesses heard by the trial judge should be held to constitute some substantial evidence to support his finding of fact that the defendants' admissions of guilt were voluntarily made, and that the court's ruling on this preliminary question should be upheld.

SCHENCK and SEAWELL, JJ., concur in dissent.