## STATE v. ALLIGOOD KING.

(Filed 10 April, 1946.)

**1. Homicide § 4e—**

A homicide committed in the perpetration of the capital felony of rape is murder in the first degree, G. S., 14-17, and premeditation and deliberation is presumed and need not be proven.

**2. Homicide § 17—**

In a prosecution for murder in the first degree, testimony that in his voluntary confession the defendant stated he entered the house in which deceased was sleeping with the motive of raping her is competent to show that the killing was done in the perpetration or attempt to perpetrate the capital offense of rape, which would constitute murder in the first degree without proof of premeditation and deliberation.

**3. Criminal Law § 29e—**

It is competent for the State to show motive for the commission of the crime charged although motive does not constitute an element of the crime.

**4. Criminal Law § 81c—**

Any error in the admission of evidence over defendant's objection is harmless when testimony to the same effect is admitted without objection.

APPEAL by defendant from *Burney, J.,* at October Criminal Term, 1945, of LENOIR.

Criminal prosecution upon indictment charging that defendant Alligood King "feloniously, wilfully, and of malice aforethought, did kill and murder Mrs. Raymond T. Hardy, etc."

It appears from the record that while the grand jury of Lenoir County had returned three true bills of indictment, charging defendant with

committing three separate capital offenses, burglary in the first degree, rape, and murder in the first degree, he was put on trial only on the indictment charging murder in the first degree.

The case on appeal as shown by the record on this appeal, discloses that the State offered on the trial below testimony tending to show in summary these facts:

On Sunday morning, 9 September, 1945, the body of Mrs. Raymond T. Hardy, cold in death, lying face down "on the floor off the bed" in the sun-, or front, sleeping-porch of her home in Lenoir County, near the Greene County line, North Carolina, was found between quarter past five and five-thirty o'clock by her husband upon his return from the Commercial Club in Kinston, to which he had gone about ten o'clock the night before and where he had remained all night. Mrs. Hardy, mother of three small children, was in good health when her husband left home Saturday night. But, upon his return, her throat had been cut in two places, severing her windpipe and large blood vessels. The wounds had smooth edges and apparently were made with some sharp instrument. These wounds, in the opinion of a medical expert, produced her death. (It was agreed in court that the doctor's description of the wounds on her body will relate only to such wounds as may have caused her death.) Other details as to wounds need not be stated.

The officers were notified and soon arrived. In searching the house where defendant resided, the officers found a knife, a pair of dark brown pants (bearing name of defendant) which were damp and splotched, and with blood on them inside the pockets; and a pair of shorts that had blood on them in front.

Defendant, who had resided and worked on the Hardy farm, but who had lately moved of his own accord to another place in the community, was taken into custody about eight o'clock that Sunday morning. Soon thereafter, during that day, in response to questioning by the Sheriff Churchill, defendant voluntarily confessed, briefly stated, that late in the night as he was returning to his home from Kinston, by the road that passed the Hardy house—the natural course for him to go to his home—he "fooled around" the Hardy house for a while; that he saw that Mr. Hardy's automobile was gone, and he knew by that Mr. Hardy was not at home; that he then entered the house by cutting the screen on the back porch door and unhooking the latch; that he pulled the light switch; that he got a jar of fruit out of the sideboard and went to Mrs. Hardy's room, where she was apparently asleep, snoring; that he first hit her over the head with the jar of canned fruit, and then got in bed with her and cut her throat; and that he killed her to keep her from telling on him. (Other details are not essential.)

There was evidence also that the officers found that everything defendant told Sheriff Churchill and others on this Sunday "was like he said it was."

In the course of the examination of the sheriff as a witness for the State with respect to the confession made to him by the defendant, the sheriff was asked this question and gave the following answer, to wit: "Q. Sheriff, during the time that he was talking to you on this Sunday afternoon—or Sunday, anyway (we told you this morning not to tell anything only what happened pertaining to the murder trial, but I do want to ask you this much) what did he tell you, if he told you anything, of why he went in the house? What was the purpose? A. I asked him if he minded telling me why he went in the house—did he go in there to ravish her or have carnal knowledge of her,—and he said, 'I went in there to ravish her.'"

Defendant objected to the question on the ground that it probably relates to something besides murder, for which alone he is being tried. Objection overruled and defendant excepted. Defendant then objected to the answer and moved to strike it. Motion was denied and defendant excepted. These constitute defendant's exceptions 1 and 2.

Further in this connection, Deputy Sheriff Burkett testified, without objection, that he heard defendant state substantially what Sheriff Churchill said. N. H. Byrd also testified, without objection, that he was present when defendant made his confession on Sunday morning when he was arrested, and that "he said he went in there to ravish her"— and that he killed her "to keep her from telling on him." And while defendant, as witness for himself, denied that he had made such statement to Sheriff Churchill, he testified: "After a while that other fellow said 'Did you go in there to rape?' And I told him, 'Yes, sir.' I was scared."

There was also testimony that on the following Friday night defendant told the sheriff a different story, saying that he killed Mrs. Hardy, but that her husband hired him to do it and was present when it was done. And on the trial defendant so testified. On the other hand, in this connection, the State offered the husband as a witness and he denied the testimony of defendant, and any implication by him in the death of his wife. The State also offered three other witnesses who testified that they were with the husband in the Commercial Club, and that he did not leave the club after he arrived about ten o'clock Saturday night until five o'clock Sunday morning.

Verdict: "Guilty of the felony of murder in the first degree whereof he stands indicted."

Judgment: Death by inhalation of lethal gas administered in the manner provided by law.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*
*Matt H. Allen and John G. Dawson for defendant, appellant.*

WINBORNE, J. The principal assignment of error brought forward on this appeal challenges the competency of the testimony of the sheriff as to statement of defendant as to his purpose in going into the Hardy house at the time of the killing of Mrs. Hardy. The assignment is untenable for several reasons, among which are these:

First: "A murder . . . which shall be committed in the perpetration or attempt to perpetrate any . . . rape . . . burglary or other felony, shall be deemed to be murder in the first degree . . ." G. S., 14-17, formerly C. S., 4200. For application see *S. v. Bennett, ante,* 82; *S. v. Mays,* 225 N. C., 486, 35 S. E. (2d), 494; *S. v. Dunheen,* 224 N. C., 738, 32 S. E. (2d), 322; *S. v. Miller,* 219 N. C., 514, 14 S. E. (2d), 522, and numerous others.

Thus when a homicide is committed in the perpetration of the capital felony of rape, the State is not put to the proof of premeditation and deliberation. In such event the law presumes premeditation and deliberation. Applying this principle to the present case, defendant is charged with murder in first degree. Hence, it is competent for the State to show that the killing was done in the perpetration or attempt to perpetrate the capital offense of rape.

Second: The evidence is competent in any event for purpose of showing a motive for the crime. It is competent to show motive for the commission of a crime, although this does not constitute an element of the crime charged. See *S. v. Lefevers,* 216 N. C., 494, 5 S. E. (2d), 55; *S. v. Hudson,* 218 N. C., 219, 10 S. E. (2d), 730; *S. v. Oxendine,* 224 N. C., 826, 32 S. E. (2d), 648; *S. v. Smith,* 225 N. C., 78, 33 S. E. (2d), 472.

Moreover, if the testimony were incompetent for any purpose, any error in its admission would be harmless for that (a) testimony to the same effect was admitted in evidence without objection, *S. v. Hudson, supra; S. v. Oxendine, supra,* and (b) for that defendant, as a witness for himself, stated, without objection, that he had made substantially the same admission to another person. *S. v. Matheson,* 225 N. C., 109, 33 S. E. (2d), 590.

All other assignments of error are of formal nature, and, in the light of the record and the case on appeal, are without merit and require no special treatment.

Finally, it is appropriate to say that counsel for defendant, in their diligence, have failed to point out error in the trial below, and, after careful consideration, none appears to us. Apparently the facts have been fairly presented to the jury under a charge to which there is no exception, and in the judgment on the verdict of the jury we find

No error.