## STATE v. JULIUS BUNTON

(Filed 10 January, 1958.)

**1. Criminal Law § 159—**

Assignments of error not brought forward in the brief, or in support of which no reason or argument is stated or authority cited, are deemed abandoned.

**2. Criminal Law § 111—**

In this case it *is held* the court correctly instructed the jury that defendant's evidence of good character should be considered as substantive evidence on the question of guilt or innocence.

**3. Homicide § 27h—**

Where the State's evidence establishes murder committed in the perpetration of a robbery from the person, the offense is murder in the first degree, irrespective of premeditation or deliberation, and therefore in such prosecution the court is not required to submit the question of defendant's guilt of murder in the second degree upon defendant's contention that he was too intoxicated at the time to premeditate and deliberate. Further, the evidence in this case is not sufficient to make available to defendant the defense of intoxication.

**4. Criminal Law § 114—**

The charge of the court upon the jury's right to recommend life imprisonment if they should find defendant guilty of murder in the first degree *held* without error. G.S. 14-17.

APPEAL by defendant from *Olive, J.,* at March 11, 1957 Criminal Term of GUILFORD—High Point Division.

Criminal prosecution upon bill of indictment charging "that Julius Bunton and John Kollock, Jr., late of Guilford County, on the 5th day of January, A.D. 1957, with force and arms, at and in said county, feloniously, willfully, and of his malice aforethought, did kill and murder Clifford Witt Phillips against the form of the statute in such case made and provided, and against the peace and dignity of the State," returned by the grand jury as a true bill against defendants Julius Bunton and John Kollock, Jr.

Upon the call of the above case for hearing before the presiding judge at the January 21, 1957 Criminal Term of Superior Court of Guilford County, defendant Julius Bunton was brought into court by the sheriff. And it appearing to the court (1) that this defendant stands indicted for the crime of murder, and that the case is calendared for trial on February 18, 1957; and (2) that this defendant does not have counsel and does not have sufficient funds or means to obtain counsel, the presiding judge, pursuant to the statute in such cases made and provided, and by written order, appointed James W. Clontz, attorney at law, to represent the defendant and to prepare such defense as he might have to said charge of murder.

And upon arraignment on Monday, 11 March 1957, at a regular term of Superior Court of Guilford County (High Point Division) for the trial of criminal cases, defendant Julius Bunton and his codefendant John Kollock, Jr., their respective counsel being present, each pleaded not guilty, and placed himself upon God and his country for trial.

And upon trial at said term of court last above mentioned the defendants and their respective counsel being present, the State offered evidence tending to show substantially the following:

The lifeless body of Clifford Witt Phillips, with wound in the back of the head, was found by officers of the High Point Police Department about 1:50 a.m., 5 January, 1957, in taxicab parked on Hoskins Street, approximately one-half block off Washington Street in the city of High Point, North Carolina. All the lights were on except those inside the cab. The body was sitting under the wheel slumped over to the right. Blood was on the back of the front seat, and on the floor board. The glove compartment was open. His cap and paper, match covers, and the like, were on the seat. And it was later ascertained that the right-hand, and the left-hand-hip pockets of his trousers were turned "wrong side out". Upon examination by the coroner the hole in the back of the head was, in his opinion, made by a bullet, which caused the death of Phillips. A .38 caliber bullet was

found in the head and taken out—and left with police officer, who marked it for identification.

As a consequence of telephone call five officers of city police department were sent to Bennettsville, South Carolina, on 8 January, 1957, where the said defendants, Julius Bunton and John Kollock, Jr., were there in the custody of the sheriff.

Interviewed at the sheriff's office, the officers testified each of the defendants made statements in relation to the events pertaining to the death of Phillips. In substantial accord, they detailed a plot to get some money, and to get it from a taxi driver, —and how they executed the plot. Kollock got in the front seat, and Bunton in the back seat directly behind the driver. They gave direction to driver as to course to take, and as they turned off Washington Street into Hoskins Street defendant Bunton shot the driver in the back of his head. Kollock stopped the taxi. They both went through the pockets of Phillips as well as the glove compartment and got his money, approximately $15.00, and divided it between themselves. They then wandered around and spent the night in the woods. In the meantime Bunton stuck the gun in weeds beside a telephone pole, and threw the pocket book into the weeds.

The court found as a fact that the statements which the officer who first testified says were made to the officers by defendant Kollock and by defendant Bunton were freely and voluntarily made without any threats or duress, promise of reward, or alleviation of punishment.

The officers brought defendants from Bennettsville, S. C., to High Point, N. C., and upon arrival at High Point the pistol, a .38 caliber revolver, and the pocket book were found where indicated above. The pistol had in it an empty shell, and two loaded shells. The pistol, empty shell, and the bullet found by the coroner, as above recited, were examined by ballistic expert —who testified, in his opinion, that the bullet had been shot from the pistol.

And defendant Bunton, upon being asked by one of the officers "if there was any reason why this thing had taken place," stated that he had been drinking, and that was the only statement he made. And there is evidence that he had taken some drinks, and that he was under influence of intoxicating liquor when he left the Brown home about 10:45—when he and Kollock left.

Verdict: The jury returned for its verdict and said (1) that the defendant Bunton is guilty of murder in the first degree as charged in the bill of indictment; and (2) that the defendant John Kollock, Jr., is guilty of murder in the first degree and recommends imprisonment for life in the State Prison.

And, the jury, upon being polled at request of counsel for Julius Bunton, each juror answered to his name as called, and, for his verdict, said that the defendant Julius Bunton is guilty of murder in the first degree as charged in the bill of indictment and that he still assents thereto.

Judgment: As to defendant Kollock: Confinement in the State Prison at Raleigh, North Carolina, for the term of his natural life.

As to defendant Julius Bunton: Death by inhalation of lethal gas as provided by law.

To the judgment so rendered, defendant Julius Bunton, through his attorney, James W. Clontz, excepted and gave notice of appeal, and appeals to Supreme Court. And as shown of record defendant Julius Bunton was permitted to appeal without making bond or the deposit required, that is, in *forma pauperis;* and Guilford County was ordered to pay the costs of obtaining a transcript of the proceedings had, and the evidence offered on the trial for use of defendant, Julius Bunton, also to pay necessary cost of preparing the copies of record and briefs required of defendant on such appeal.

*Attorney General Patton, Assistant Attorney General Bruton for the State.*

*J. W. Clontz for defendant appellant.*

WINBORNE, C. J.: Of the twenty-nine assignments of error grouped in the case on appeal, only exceptions to which assignments of error numbered 16, 17, 18, 19, 20, 21, 22, 23, 25, 26 and 27 relate are set out in defendant appellant's brief, or in support of which reason or argument is stated or authority cited. Hence, under Rule 28 of Rules of Practice in the Supreme Court, 221 N.C. 544, at page 562, and decisions of this Court pursuant thereto, all other exceptions will be taken as abandoned by him.

The question then arises: Is there error in matters challenged by exceptions presented? Careful review and consideration of the record and case on appeal fails to disclose prejudicial error.

I. An inspection of the record proper, in the light of proper practice in trial of homicide cases, such as this is, discloses that orderly procedure was followed, and there is no error apparent upon the face of the record.

II. Assignments of error 21 and 25, based upon exceptions 21 and 25 to failure to charge in respect to character evidence, the defendant not having testified, or put on evidence as to his good character: Under cross-examination, witnesses put on the stand by defendant Kollock did testify to good character and reputa-

17—247

tion of defendant Bunton. And the court, in charging the jury, called attention to the fact that there was some character evidence introduced as to both defendants; that such evidence is substantive in that the jury would consider it as to the guilt or innocence of defendants,—as to whether a person whose character is testified to be good would commit such a crime. The charge is in substantial accord with proper instruction. *S. v. McMahan,* 228 N.C. 293, 45 S.E. 2d, 340.

III. Assignments of error Numbers 17, 18, 19, 20, 22, 23 and 26, are based upon exceptions of like numbers, to portions of the charge which defendant Bunton contends are erroneous in that the court restricted the jury to the return of one of three verdicts—guilty of murder in the first degree, or guilty of murder in the first degree with recommendation of life imprisonment, or not guilty—without including murder in the second degree. Defendant, appellant, contends that the evidence as to his intoxication is sufficient to require the submission of question of second degree murder, and that, hence, it was the duty of the trial court to instruct the jury as to second degree murder as one of the verdicts which the jury might return. In support of this position these cases are cited: *S. v. Murphy,* 157 N.C. 614, 72 S.E. 1075; *S. v. Shelton,* 164 N.C. 513, 79 S.E. 883, and *S. v. Edwards,* 211 N.C. 555, 191 S.E. 1.

In this respect, speaking to the question of intoxication in *S. v. Murphy, supra, Hoke, J., later C.J.,* delivering the opinion of the Court, had this to say: "It is very generally understood that voluntary drunkenness is no legal excuse for crime, and the position has been held controlling in many causes in this State and on indictments for homicide * * * The principle, however, is not allowed to prevail where, in addition to the overt act, it is required that a definite specific intent be established as an essential feature of the crime. In Clark's Criminal Law, p. 72, this limitation on the more general principle is thus succinctly stated: 'Where a specific intent is essential to constitute crime, the fact of intoxication may negative its existence.' Accordingly, since the statute dividing the crime of murder into two degrees and in cases where it becomes necessary, in order to convict an offender of murder in the first degree, to establish that the 'killing was deliberate and premeditated,' these terms contain, as an essential element of the crime of murder 'a purpose to kill, previously formed after weighing the matter' * * * a mental process, embodying a specific, definite intent, and if it is shown that an offender charged with such crime, is so drunk that he is utterly unable to form or entertain this essential purpose he should not be convicted of the higher offense. It is said in some of the cases, and the state-

ment has our unqualified approval, that the doctrine in question should be applied with great caution * * * ."

However, it is provided by statute, in this State, that a "murder * * * which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * or other felony shall be deemed murder in the first degree * * * ." G.S. 14-17. *S. v. Lane,* (1914) 166 N.C. 333, 81 S.E. 620; *S. v. Donnell,* (1932) 202 N.C. 782, 164 S.E. 352; *S. v. Glover,* (1935) 208 N.C. 68, 179 S.E. 6; *S. v. Exum,* (1938) 213 N.C. 16, 195 S.E. 7; *S. v. Alston,* 215 N.C. 713, 3 S.E. 2d 11; *S. v. Miller,* (1941) 219 N.C. 514, 14 S.E. 2d 522; *S. v. King,* (1946) 226 N.C. 241, 37 S.E. 2d 684, and other cases.

To this statute, G.S. 14-17, the General Assembly of 1949, Chapter 299, S. 1, added the following: "Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's Prison, and the court shall so instruct the jury." This proviso has been the subject of discussion in several cases. *S. v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212; *S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684; *S. v. Simmons,* 234 N.C. 290, 66 S.E. 2d 897; S.C. 236 N.C. 340, 72 S.E. 2d 743; *S. v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664; *S. v. Conner,* 241 N.C. 468, 85 S.E. 2d 584; *S. v. Carter,* 243 N.C. 106, 89 S.E. 2d 789; *S. v. Adams,* 243 N.C. 290, 90 S.E. 2d 383; *S. v. Cook,* 245 N.C. 610, 96 S.E. 2d 842.

In the present case all the evidence shown in the record of case on appeal tends to show that the defendant, in the perpetration of a robbery, shot and killed Clifford Witt Phillips. A homicide so committed is declared by the statute, G.S. 14-17, to be murder in the first degree. *S. v. Alston, supra.* Thus when a homicide is committed in the perpetration of a robbery, the State is not put to the proof of premeditation and deliberation. In such event the law presumes premeditation and deliberation. *S. v. King,* 226 N.C. 241, 37 S.E. 2d 684. See also *S. v. Maynard, ante,* 462, cotemporaneous herewith, where this Court in opinion by *Parker, J.,* restates the principle in this manner: "Where a murder is committed in the perpetration or attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought," citing cases.

Moreover, while evidence tends to show that the defendants were drinking, and that they were "pretty drunk", when the witness James McCollum last saw them before the time the body of the deceased was found, there is no evidence tending to show that defendant Bunton did not know what he was doing, both in the planning and in the execution of the robbery.

Indeed, the evidence is not sufficient to make available to him the defense of intoxication. Hence there is no prejudicial error in the court limiting the verdicts as above indicated.

In respect to Assignments 16 and 27 it is noted that the trial judge charged the jury as to the provision added to G.S. 14-17 by the act of 1949 Session Laws, Chapter 299, Section 1, above quoted in respect to recommendation of life imprisonment, all in substantial accordance with decisions of this Court. *S. v. McMillan, supra,* and other cases above cited.

After careful consideration of the record proper, the record of case on appeal, and all assignments of error, both those brought forward in brief of the appellant, and those deemed abandoned, error of prejudicial nature, sufficient to require the disturbing of the verdict, and judgment from which appeal is taken is not made to appear.

Hence the judgment is affirmed, and in the trial there is

No Error.